# WARING *a.* WARING.

## *Supreme Court, Second District; Special Term, April,* 1858.

### PARTITION.—AMENDMENT.—NOTICE OF PENDENCY OF ACTION.

Of the proper time of filing a notice of pendency of action for partition, and of the effect of irregularities in the filing.*

---

 · * BENSON *a.* SAYRE.—*Supreme Court, First District; Special Term, July,* 1858.— This case came up on a motion by the plaintiff in a foreclosure action to require the purchaser at the sale to take title; and a motion by the purchaser to be discharged from the purchase on the ground of irregularity in the proceedings, and to have his payment returned. It appeared that after service of summons the plaintiff filed a notice of *lis pendens,* and on the next day filed his complaint. After the filing of the complaint the premises were incumbered by other mortgages. The purchaser objected to the title, on the ground that the notice of *lis pendens* and complaint were not filed at the same time.

INGRAHAM, J.—Conceding that until the filing of the complaint the notice of *lis pendens* was of no validity, it appears to me the filing of the complaint gave it validity. It was then on file, and the filing of the complaint placed both papers on file the same day. The notice of *lis pendens* gave notice to the parties taking subsequent conveyances or incumbrances. Before the subsequent incumbrance in this case was received, both papers were on file, and the object of the statute in requiring them to be filed together was answered. The party having notice of the *lis pendens* could refer to the complaint on file for all the information to be obtained therefrom. The commencement of the action by the service of the summons is necessary to give validity to the notice, for the very good reason stated by Mr. Justice Rockwell, in Burroughs *a.* Reiger (12 *How. Pr. R.,* 171)—viz., that notice of the pending of a suit before the suit is commenced is a nullity. In the same case he also holds the meaning of the statute to be, that the filing of the notice of *lis pendens* shall not affect purchasers until the complaint is filed.

If the incumbrance had gone on record before the filing of the complaint, a different question would be presented, which it is not now necessary to decide, as it is conceded that the property in this case was not affected in the title by any act until after the notice and complaint were both filed. Any other construction of the statute would render it impossible for a party to comply with it so as to file the notice and complaint at the same time, where the property was located in different parts of the State.

If there was any necessity for it, the court might allow an amendment of the filing, so as to order the complaint refiled, *nunc pro tunc,* as of the date of filing

If in a partition action the plaintiffs omit to file any of the papers necessary to the judgment, they may be allowed to file them *nunc pro tunc,* and the purchaser is not compellable to take title until they are so filed.

If a guardian's bond, filed in pursuance of an order which allowed one to be filed *nunc pro tunc* but did not specify the penalty or the security, is unobjectionable in every respect except as to the term of time, the irregularity is not ground of discharging the purchaser, for under the act of 1857 the bond may be amended after judgment.

The referee's report showed that certain of the defendants died pending the action for partition, and that their interests in the premises, specifying them, survived to other of the parties to the action.

*Held,* 1. That although there was no reason to suppose that a suggestion of the deaths was necessary to be filed, leave should be granted to the plaintiffs after judgment to file such, *nunc pro tunc.*

2. That the objection that there was no proof of service of summons in the action upon the defendants so deceased, was obviated by their death, and the succession to their interests of other parties who were shown to have been served.

*It seems,* that indebtedness of a deceased part owner of real property can form no valid objection to a partition between his heirs and the other part owners, upon the application of the latter, or to a sale of the entire property in a partition action.

Of the proper disposition of the proceeds of sale in such case.

Motion by plaintiffs in partition that the purchasers be compelled to take title; and motion by one of the purchasers to be discharged from his purchase.

*C. T. Cromwell,* for the plaintiffs.

*John T. Rolfe,* for the purchasers.

S. B. STRONG, J.—This is an action for the partition of lands between the heirs of the late Henry Waring, deceased.

The proceedings have been complicated, and have devolved upon the parties very heavy expenses, which have been awarded to their counsel by a decree of this court. No doubt the various measures which have been adopted have been necessary for the protection of the rights of the owners, and the security of the purchasers; and the professional gentlemen who have been en-

the notice of *lis pendens.* If the parties see fit to make such an order, it can be entered, although I am of the opinion that it is unnecessary in the present case.

The motion for a return of 10 per cent. is denied.

The motion that the purchaser complete his purchase is granted: no costs allowed on either motion.

gaged, have earned the compensation which has been adjudged to them respectively. Whether the amounts were conformable to the provisions of the Code in force at the time when the decree was pronounced, or the practice of the court, are not questions for my consideration on the motions before me.

The lands in question have been sold to several persons under the decree. The purchasers object to the titles on various grounds, resulting from what they deem defective and irregular proceedings in the suit, and the claims of other persons upon the property, which, they allege, have not been concluded by the decree; and one of them moves that the sale to him should be vacated, and the money advanced by him returned. The plaintiffs move, with the concurrence of all the defendants, that the purchasers shall be required to take the usual conveyances in such cases, and pay the consideration money.

The first objection set forth in the affidavit of the counsel for the purchasers (and which, I must say, has been so hastily drawn that it is almost illegible) is, that the complaint was not filed with the notice of *lis pendens*, nor indeed until the time when the decree was docketed. The allegation is countenanced by the acknowledged fact that there is no complaint filed, at an earlier date than the time of the decree, in the office of the county clerk, nor any minute in the appropriate book that the complaint had been duly filed. Against this, however, one of the plaintiffs avers positively that the complaint was inclosed in the notice of *lis pendens*, when it was filed in his presence by the late Mr. Crist, who was afterwards drowned, and that it was taken from the files of the office subsequently, to be used on an argument before one of the judges of this court, and was probably not returned. The fact that no minute of filing the paper is to be found is, no doubt, explained by the circumstance that it was inclosed in the notice, and that it thus escaped the attention of the officer to whom it was delivered. I am satisfied that the notice and complaint were filed together, and that the notice immediately became, and continued to be operative, and a correspondent determination may be incorporated in the order. The absence of the complaint from the clerk's office did not suspend the effect of the notice, and the irregularity was subsequently cured by filing a copy with the decree pursuant to an order of this court.

I agree that a notice of *lis pendens* is ineffectual until a complaint is filed, and I concur with the late Judge Rockwell in thinking that it is inoperative as to any defendant, or those claiming under him through subsequent owners, until a summons has been served upon him either personally or through an advertisement. (Burrows *a.* Reiger, 12 *How. Pr. R.*, 171.) But with great respect for the memory of the learned judge, I do not agree with him that the filing of a notice before the service of a summons would be a nullity. The Revised Statutes do not directly limit the time in any way (2 *Rev. Stats.*, 174, § 43), but that Code expressly provides that the notice may be filed with the complaint without any reference to the service of the summons. If the notice could not be filed until the suit had been actually commenced by the service of process upon all the parties, it would be of no avail as to any one when there were absent defendants, until the published time for their appearance had expired. The delay might operate very injuriously, and I am satisfied that it was never contemplated by any statute. I have said thus much upon this point, as it may prevent any future motion which might otherwise result from my conclusion that the notice and complaint were filed together, and probably (as to some of the defendants) before the service of the summons upon them. It is also objected that no new notice of *lis pendens* was filed when an amended complaint adding new defendants was adopted. In the case of Curtis *a.* Hitchcock (10 *Paige*, 399), which was cited by the counsel for the purchasers, the chancellor said: "When the bill is amended by adding new parties after the filing of the notice of *lis pendens*, a new notice is absolutely necessary to have the rights of the judgment creditors of such new parties, as well as to make the amended bill constructive notice to subsequent purchasers from such new parties." It would seem from the guarded language of the chancellor that in his opinion the filing of a new notice was requisite, only as to the added parties, and those claiming under them: and there is nothing in the statutes requiring that it should be done, nor can I see any reason why it should be done, so far as it relates to the parties affected by the original notice. In this case the names of the added defendants were subsequently struck out, and nothing is claimed against them, or those having subsequent liens against them or their property, nor does it ap-

pear there is any thing relating to either which can impair the title to be acquired by the purchasers.

There were unquestionably some irregularities in reference to the infant defendants. Although their guardian was duly appointed, and a proper bond was originally executed by him, yet it was never filed, and it was probably lost at the time of the disaster which caused the death of Mr. Crist. I do not agree with Judge Hoffman that the objection that the bond has not been filed, goes to the jurisdiction of the court in the action against the infants. Jurisdiction as to them is acquired by the service of the process :* such must have been the opinion which influenced the Legislature to pass the act of April 14, 1852 (*Laws of* 1852, ch. 277, p. 411), providing that when the guardian's bond had not been filed in due season, or could not be found, a new one might be filed by an order of the court or a judge, made at any time before judgment or decree, in all cases as of the same date as the order appointing the guardian, which bond when so filed, and all preceding rules, orders, and decrees in the suit subsequent to the date of the order appointing the guardian, should have the like effect as if such bond had been directed by the court, and duly executed and filed by the guardian at the date of his appointment. If the court had no jurisdiction as to the infant defendants when the rules, orders, or decrees were made, they would have been simply void, and the rights of such defendants could not have been affected by any such action of the Legislature. The more important requisition in the act for the partition of lands in reference to infant defendants is, that the guardian shall give the bond required by the order of the court. That was done in this case. The provision that the court shall be satisfied that the bond has been filed, before any rule to plead, or any other subsequent rule or order shall be made, is undoubtedly directory upon the court, but does not limit its powers. Whether in this instance the court was satisfied that the bond had been filed does not appear, and perhaps the contrary ought not to be inferred. When the action of the court (of general jurisdiction) is to be predicated upon proof of particular fact, such proof is ordinarily to be presumed, and it would be dangerous to annul the proceed-

---

* See Croghan *a.* Livingston, 6 *Ante*, 350.

ings because such proof cannot be found at a subsequent date. If, however, the allegation that no bond had been filed is fully maintained in this case, the difficulty would have been cured before any decree was entered, if the order made in 1855 had been strictly in accordance with the provisions of the act of 1852; but it would seem that it was defective in not specifying the penalty and naming the surety. Probably there was, or was intended to be, a reference to the order previously made, or to those particulars.

Whether a bond was executed and filed pursuant to the order does not distinctly appear. If the last order referred to that formerly made, and a bond was executed and filed, conformably to it, the difficulty resulting from the omission to file the original bond was cured. If not, it seems to me that the bond executed and filed in 1857, pursuant to an order of this court, and which is unobjectionable (except as to time), will so far maintain the proceedings as to protect the purchaser under the provisions of the act of April 15, 1857, extending the benefits of section 173 of the Code to suits in partition. By that section the court may, after judgment, amend any proceedings by correcting a mistake in any respect. Under that enactment, it has been held that an undertaking on an arrest, or on an appeal, may be corrected. (Billinger a. Gardner, 12 *How. Pr. R.*, 381; Wilson a. Allen, 3 *Ib.*, 369; Schermerhorn a. Anderson, 1 *Cow.*, 430.) Surely the correction of a mistake in expressing the terms of a guardian's bond in an order, an omission by the principal to sign it, or an omission to file the bond originally executed, would be going no further. I am satisfied that the omission to file the original bond has been cured by the subsequent proceedings, so that the decree effectually binds the interest of the infant defendants.

If the plaintiffs have neglected to file any of the papers requisite to render the judgment record conformable to the provisions of the Code, the order to be entered may grant them leave to do so *nunc pro tunc*, and the purchasers must not be required to take their conveyances until such papers (to be specified in the order) shall have been filed.

It would undoubtedly have been the most proper course to have filed suggestions of the deaths of two of the defendants when they occurred. As their interest survived to the remaining defendants, nothing more was necessary. (2 *Rev. Stats.*,

386, § 1.) Section 121 of the Code is to the same effect. (Taylor *a.* Church, 9 *How. Pr. R.*, 190.) I can see no objection to filing such suggestions *nunc pro tunc;* and leave is granted to the plaintiffs to do so. That will place them formally right upon the record, although it may not be absolutely necessary from the peculiar provisions of the Revised Statutes relative to partition suits. The report of the referee states, and makes it a part of the record, that the two defendants died after the institution of this action, and that their interests have survived to the other parties. The court was fully authorized to determine the rights of the existing parties as they were made to appear (1 *Rev. Stats.*, 320, § 23), and the judgment was clearly binding upon them, and all claiming under them.

The report states very fully and clearly the amount of the portions which were owned by the deceased persons, and it is beyond dispute that the only heirs at law are the remaining parties to this action, and it is probable that the purchasers would be fully protected without any formal suggestion of the death of the two defendants upon the record. The objection that there is no proof of the publication of a notice to an absent defendant, nor of any service of a summons upon him, is obviated by his death, and the succession of the remaining parties to his estate.

If I am right in my conclusion that the notice of *lis pendens* was duly filed, no subsequent judgment or decree against any of the continued parties can impair or affect the title of the purchasers. They are also protected against all persons having general liens or incumbrances by judgment or decree on any undivided share or interest by the notice to such creditor published by the referee, and their omission to prove their claims before him. (2 *Rev. Stats.*, 324, 327, §§ 44, 63.)

It is suggested that Henry W. Wheeler, one of the original defendants, and one of the heirs at law of Henry Waring, deceased, who died in July, 1854, was at the time of his death indebted to various persons, and that he left no property except his portion of the estate of his said grandfather, and that such estate may yet be sold to pay his debts, by an order of the surrogate, notwithstanding the proceedings in this action. There is no sufficient proof of such indebtedness, and I cannot act upon the general allegation. Independently of that, I am inclined to

think that the indebtedness of a deceased part owner of land can form no valid objection to a partition between his heirs and the other part owners, upon the application of the latter, or to a sale of the entire property in a partition suit.

The action of the court is not limited by the statute in that particular; on the contrary, it declares that the conveyances upon a sale shall be a bar against all the parties, and against all other persons claiming from such parties in either of them. (1 *Rev. Stats.*, 327, § 61.) The proceeding is remedial, and notice is given, and if the representatives or creditors of the deceased persons do not think proper to interpose promptly, others, and especially innocent purchasers who have no knowledge of the indebtedness, nor any means of obtaining it, should not suffer. If there is a conflict between the powers of the Supreme Court in cases of partition, and of the surrogate in ordering the sale of real estate for the payment of the debts, that first exercised should on every principle prevail. The opinion expressed by the late Judge Barculo, in Hyde *a.* Tanner (1 *Barb. S. C. R.*, 78), has no reference to the effect of a sale in a partition suit, and besides, it seems to have escaped the attention of that learned judge that the creditors of the deceased may within the three years specified in the Revised Statutes, cause his executors or administrator to proceed to sell his real estate (2 *Rev. Stats.*, 88, § 48), and that if they neglect to enforce such remedy, others ought not to be prejudiced by their delay.

There is no proof of any existing indebtedness of the estate of Henry Waring, deceased, except as to the claims of Henry Clark against the deceased, and the defendant, Henry P. Waring, a partner, and no positive proof as to that. There is unquestionably a difference between the claims of his creditors, if there are any, and those of his heirs. His creditors do not claim under, or from the heirs or either of them, and they are not therefore within the terms of the statute; neither do they have any general lien or incumbrance upon any undivided share or interest in the land by judgment or decree, which would be by omitting to establish them before the referee. But I am inclined to agree with the late surrogate of New York, that after the expiration of the three years, within which the executors or administrators may apply for a sale of the real estate, it is discretionary with the surrogate whether to order such sale or not upon the application of the creditors.

If so, it would be an abuse of such discretion to order a sale after a lapse, as in this case, of more than seven years, and to the prejudice of a *bona fide* purchaser, who has paid the full value of the land. Still, I am not disposed to submit the title of these purchasers to the discretion of any one, and it would seem to be no more than an act of justice to Mr. Clark to offer him sufficient time to establish his claim, if he has one that is valid, and as there does not appear to be any other fund out of which he can obtain payment, to reserve for the present sufficient for that purpose. I shall, therefore, direct that six thousand dollars of the purchase-money shall be paid into the office of The New York Life Insurance and Trust Company, which has been adopted by this court as a safe depository, subject to the future order of this court in this cause ; out of the residue, the estates in dower must first be satisfied, and the residue, after payment of the costs and allowances, may be distributed *pro rata* among the other owners, except the partner of Henry P. Waring, who, if there is a valid debt against the partnership, is also liable for its payment. The demand, so far as it relates to him, has been established by a judgment, and if it should not be eventually adjudicated against the estate of his father, there will be more than sufficient funds to protect his entire interest in this suit, subject to the order of this court. If there should be any unreasonable delay in the prosecution of the suit of Mr. Clark, the fund will doubtless be distributed without reference to his claim, which would not under such circumstances be enforced against the property involved in this action. The motion that the purchases should be vacated, and that the money advanced upon them should be refunded, is denied; and an order must be entered upon the plaintiff's motion that the purchasers take the conveyances to them respectively, and pay the balances of the purchase-money. They were justified in declining to accept the deeds and pay such balances, without an order for their protection in the particulars which I have indicated, and as there is no proof that they have been in the occupation or enjoyment of the property, they are exonerated from the payment of interest.

No costs are awarded to either party as against the other, and as liberal fees have heretofore been allowed for professional services, I shall not direct any further *deduction* to be made from the funds.