ADOLPHINE A. ALTERAUGE ET AL. v. HANS A. CHRISTIANSEN ET AL.

*Sale on execution against executrix—Notice lis pendens—Bill to quiet title—Individual debts of executor.*

The personal creditors of an executrix who without the knowledge of the heirs has bought real property with moneys belonging to the estate and has taken conveyance thereof with *habendum* to herself, her heirs and assigns, cannot, on execution against her, acquire title to such real estate as against the heirs, especially if there is enough in the deed to the executrix to put them on inquiry as to the nature of her title.

The object of the notice *lis pendens* required by statute in chancery proceedings against real estate is to enable persons interested to ascertain from it the persons and property affected by the bill, together with the general nature of the matters in controversy. But they are left to examine the court record for details and particulars, and are bound by what appears in the bill and proceedings thereon.

A notice of *lis pendens* for partition sufficiently states its object if it states that it is "for the purpose of partitioning and setting apart, either by division or by sale, and a division of the proceeds among the complainant and defendants, of the hereinafter described lands and premises according to their respective titles and interests therein; the complainant's interest being now claimed as an undivided fifth part thereof."

Where a person in possession files a bill to quiet his title under the statute therefor, the claims of defendants may be put in issue and disposed of in one case, no matter how many separate instruments they claim under; but it may be otherwise if they severally claim title to distinct parcels through different sources.

One who has sought to recover money lent to an executrix as her individual debt can hardly claim redress from the heirs, afterwards, on the ground that the money was used for the benefit of the estate.

Appeal from Wayne. Submitted January 5. Decided April 12.

BILL to quiet title. Defendants appeal. Affirmed.

*Ward & Palmer* for complainants.

*George Gartner, Edwin F. Conely, Fred R. Gartner, Barbour & Rexford* and *Moore & Moore* for defendants.

MARSTON, J. The bill in this case sets forth that Ignatius J. Alterauge held a leasehold interest, renewable on the 1st day of July, 1859, and at the end of each five years thereafter, in lot 8, block 3, of the Brush farm, said lot being now designated as lot 1 of subdivision of lots 8, 9 and 10 in block 3, and that he was in possession thereof.

That he held an agreement for a parcel of land in Wyandotte designated as lot 6, block 57, and lots 10, 11 and 12 in block 106, and that the full purchase price thereof had not been paid.

That about the 27th of January, 1858, said Ignatius J. Alterauge died testate leaving surviving him Anna E., his widow, and five children. That by his will, which was duly admitted to probate, his widow Anna E. was named as executrix with Ferdinand E. Dunnebacke as executor, who duly qualified as such.

That by the will he gave to his wife, in lieu of dower, for her support and the support and maintenance of his children, the income of all his estate, so far as necessary, the surplus to be invested, and, subject to the interest, control and trust given his wife, all his estate he devised and bequeathed to his children share and share alike.

That afterwards and on the 2d day of March, 1858, the said Anna E. waived and renounced in writing the provision made for her, and elected to be endowed of the lands of which her husband died seized, and that she thereupon took upon herself the execution of said will and collected the moneys due and belonging to the estate and the rents thereof, and disposed of and converted into cash a large amount of personal property belonging thereto.

That from the money, income and effects of said estate belonging to said children she paid the balance of the purchase price on the Wyandotte property, and on the 29th day of July, 1859, and 24th day of February, 1860, by deeds of conveyance she took the title thereof to herself as executrix of the last will and testament of said Ignatius J. Alterauge deceased, in trust for his heirs and devisees, which deeds were duly recorded on the 25th day of March, 1861.

That after the death of said Ignatius and the appointment of Anna E. as such executrix and before 1860, she caused to be erected on said lot 8 of the Brush farm, a four-story brick building, with the lower story and cellar arranged for a store or place of business, and the upper stories arranged and furnished as a dwelling ; that the cost of said building exceeded eight thousand dollars, and that she paid the whole amount thereof from the property and money of the estate belonging to said children.

That on the 1st day of May, 1868, she purchased of John T. Meldrum lot 9 on the north side of Congress street on the Antoine Beaubien farm for $3850—and from the property and money of said estate paid $1850 of said purchase price, and took a conveyance of said lot to herself as grantee by the name and designation of Anna E. Alterauge, executrix of the last will and testament of Ignatius J. Alterauge deceased, and to her heirs and assigns forever and for their own proper use and benefit. And that she secured the balance of said purchase price by giving her bond and a mortgage on said lot, in which she was designated as executrix, etc., as in the deed to her.

That after the purchase thereof she had erected thereon a brick dwelling-house, at an expense of $5000, and paid the same out of the property and assets of said estate that had come into her hands as executrix, and that it was her intention to take and hold said lot and house as the property of said estate and in trust for said children, and that it was by inadvertence and mistake that such trust was not declared in the conveyance of said lot to her, and that at the time such conveyance was made, all of said children

were under 21 years of age and had no knowledge of the form or effect of said conveyance.

Previous to 1879, several of the heirs had conveyed their respective interests in all the above property, and in August, 1875, Henrietta A. Stoll, one of the heirs, mortgaged her interest to Isaac N. Ingersoll, who on foreclosure became the absolute owner thereof on December 4, 1877.

In April, 1874, Ferdinand E. Dunnebacke, who in 1872 had acquired the interest of Ignatius J., one of the children of Ignatius J. deceased, commenced proceedings in the Wayne circuit court in chancery against Anna E. as having a dower interest in the Brush farm lot, and against the other heirs, except his grantor, as tenants in common owning four-fifths of the fee in all of said property, making the mortgagees parties, and praying for a partition of the property, and on the same day notice of *lis pendens* was filed. Personal service was obtained on all of the defendants, some of whom appeared, proofs were taken, and a decree rendered, recognizing the ownership in fee of the heirs in the lands conveyed to the widow Anna E. and that she held them in trust for the heirs.

That certain judgments were recovered against Anna E. in one of which Henrietta Stoll was a party defendant, and levies made upon their interest in all of said property. In the case in which Henrietta A. Stoll was a defendant, judgment was rendered April 24, 1876, and in the others subsequent thereto.

On May 1st, 1876, defendant Hooper levied on all the interest of Anna E. and Henrietta A. Stoll. March 15, 1877, defendant Noble made a levy upon all the interest of Anna E., and on June 16, 1877, defendant Christiansen levied upon all the interest of Anna E., a sale was made thereunder, the property bid in by Christiansen and a certificate of sale made to him by the sheriff.

The bill farther alleges that the levies made and the sale to Christiansen and certificate of sale to him, throw doubts over the respective titles of the complainants, and are a cloud thereon which they ask to have removed; and for a

decree that the title to lot 9 of the Beaubien farm is held by Anna E. in trust for the use and benefit of complainants and for general relief.

The defendants demurred, and upon the same being overruled, Christiansen answered, which the others adopted, denying that it was the intent of Anna E. to take and hold lot 9 in trust, or that it was through inadvertence or mistake the trust was not declared; that he believing she was the owner of said lot endorsed paper for her, which he was obliged to pay, and that she had used such money for the use and benefit of the estate, and denied that the court obtained jurisdiction in the Dunnebacke partition suit, and other matter not material to set forth.

The real contest in this case was narrowed down, on the facts, to the right to levy upon and sell lot 9 of the Beaubien farm, as the property of Anna E. upon the judgment recovered against her. And this question must be settled, from an inspection of the conveyance, and the testimony of Anna E., as no other evidence was given touching that matter.

An abstract of complainants' exhibits is given in the printed record. The portion thereof relating to the deed of lot 9 is as follows, being Exhibit C.:

"This is a deed from John T. Meldrum and wife to 'Anna E. Alterauge, executrix of the last will and testament of Ignatius J. Alterauge, deceased,' is a warranty deed in the usual form, dated May 1, 1868, and for the consideration of $3850 conveys to her, to have and to hold to herself, her heirs and assigns forever, lot 9 north side of Congress street of the Antoine Beaubien farm, subject to a mortgage of $2000 given by Anna E. Alterauge, executrix as aforesaid, to said Meldrum for part of the purchase price. Mrs. Alterauge testified as follows:

"I collected the money due Mr. Alterauge on accounts, notes and mortgages. I bought a lot of John T. Meldrum situate on the north side of Congress street on the A. Beaubien farm."

*Question.* For whom or what did you intend to buy that lot; that is, for whose estate?

*Answer.* For myself and for my family.

*Q.* Did you buy the lot for the estate of your husband or for anybody else?

*A.* Certainly, I bought it for the estate; I paid $1850 on the lot.

*Q.* With what money did you make that payment on the lot?

*A.* I took that money from the estate's money. I built a house on the lot: the money was also taken from the estate's money. * * * Mr. Cullen drew the deed from Meldrum to me; he had charge of taking that deed.

*Q.* Did you look it over to see just how it was made?

*A.* Mr. Cullen when he made something out, then he always says: 'Now, Mrs. Alterauge, sign this;' I thought he would do the best for me. I found after that many times it wasn't so; of course I didn't know; I bought but one lot of Mr. Meldrum."

In July, 1875, when Mrs. Alterauge was examined as witness in the partition suit, she gave similar testimony, in reference to purchasing this lot with the moneys of the estate.

When therefore it clearly appears, as it does in this case, that an executrix has taken the moneys belonging to an estate, and without the knowledge or consent of the heirs or persons interested, has purchased real estate therewith, and taken a conveyance thereof, with *habendum* to herself, her heirs and assigns forever, can her creditors upon a judgment and execution issued thereon and a sale thereunder, acquire and hold the title thereto as against the heirs of the deceased? If this can be done, then the representative of an estate may so manage that his creditors shall have the benefit thereof, and the rightful heirs be obliged to look to his bonds for protection.

The law has ever been very strict in not allowing a person who stands in a fiduciary relation to an estate, to become the owner thereof, either directly or indirectly. And it has been held that when a creditor levies upon a trust estate, of which his debtor is trustee, he will not be permitted to hold the same as against the *cestui que trust*, although when he levied upon the land he was ignorant of the trust. *Shryock v. Waggoner* 28 Penn. St. 430.

In this case the grant was to "Anna E. Alterauge, executrix of the last will and testament of Ignatius J. Alterauge deceased." And although the legal estate passed to Mrs. Alterauge and she could have conveyed a good title thereto, (*Little v. Lesia* 5 Mich. 119) yet it may admit of some question whether parties dealing with her in reference to this property would not be bound by what appears in the granting clause, to ascertain whether the premises were held in her own right or in trust for the estate.

It was urged that strong equities existed in favor of the defendant Christiansen for the reason that the money he loaned Mrs. Alterauge was used by her for the benefit of the estate. It is sufficient to say in answer to this, that Christiansen did not seek in the first instance a remedy against the estate. He pursued his remedy against Anna E. Alterauge and treated the loan as one made to her, and for which she, and not the estate, was liable.

In 1874, long before any of these judgments were recovered, Dunnebacke, claiming an interest in this property through one of the heirs of Ignatius J. Alterauge, deceased, commenced proceedings for a partition of this property. Christiansen was examined as a witness in that case and testified that he knew the deceased, his widow and children; that he was familiar with the property sought to be partitioned, its situation and probable value, and that in his opinion the property could not, nor could any parcel of it, be divided into five parts without a sale. It may fairly be inferred from this that he had some knowledge that this lot was not claimed by the widow, but that the children of the deceased had an interest therein.

A notice of the pendency of the chancery suit for a partition was filed in the register's office for record in accordance with the provisions of Comp. L. § 5065. This, it is said, gave no notice of a trust. The object, as stated in the *lis pendens*, was as follows: "For the purpose of partitioning and setting apart, either by division or by sale, and a division of the proceeds among the complainant and defendants of the hereinafter described lands and premises according to

their respective titles and interests therein; the complainants' interest being now claimed as an undivided fifth part thereof." The statute requires the notice to set forth the title of the cause, and the general object thereof, together with a description of the lands to be affected thereby. It seems to me that this notice was full and specific as contemplated by the statute. The object which the statute has in view is the giving of such a notice as will enable parties to ascertain therefrom the persons and property affected by the bill with the general nature of the matters in controversy, leaving them to an examination of the court record to ascertain the details and particulars thereof. And where such a notice is given, parties are bound by what appears in the bill and proceedings thereunder.

It was also urged that the bill was multifarious, and that the demurrer thereto should have been sustained. In *Hammontree v. Lott* 40 Mich. 193, it was said that where a bill is filed by a person in possession, under the statute, to establish and quiet his title to the premises, it matters not through how many different sources, or under how many distinct and separate instruments, defendants claim title thereto, all may be put in issue and disposed of in one case; that if the defendants severally claimed title to separate and distinct parcels of this land through different sources it might be different.

After a consideration of all the matters and questions raised we are of opinion that the decree of the court below should be affirmed with costs.

The other Justices concurred.