TILDA KITTELSON PLOTT, et al., Respondents, v. JOHN KIT-
TELSON, et al.   JOHN KITTELSON and John Larson, Ap-
pellants.

(228 N. W. 217.)

882

Opinion filed December 10, 1929.

B. F. *Spalding,* for appellants.

*Robert A. Eaton* and *S. E. Ellsworth,* for respondents.

BURKE, Ch. J.   This is an action to determine adverse claims to lot nine, block twenty-three in the town of Galesburg, North Dakota, and the northeast quarter of section 19, township 143, range 53 in Cass county, North Dakota.   The plaintiffs claim that said lands were conveyed to their mother for life, with the remainder over to them at the expiration of the life estate in their mother.

The defendant, John Kittelson; denies that it was a deed of conveyance, and claims that it was at most only an executory contract, that it was never operative, never delivered, and the defendant, John Larson claims under a deed from John Kittelson.   There was a judgment for the plaintiffs and the defendants appeal.

There is a motion by respondents to strike out appellants' assignment of errors from seven to sixty-eight, for the reason, that such assignments do not specify the particulars, errors and the reasons why they are erroneous.

This action was properly triable, and was tried under § 7846, Comp. Laws 1913, as amended by chapter 8, § 1, laws of 1919.   The defendants Kittelson and Larson in the statement of the case each desire and demand a retrial of the entire case in the supreme court.

In the case of Peckham v. Van Bergen, 8 N. D. 595, 80 N. W. 759, the court said:

"As to eight of said findings of fact, the defendant has filed exceptions upon the ground that the same, respectively, are not justified by the evidence.   Said exceptions embrace no specifications of particulars.   But such exceptions are unnecessary in a case where the statement embraces the declaration that the defendant desires a retrial of

the whole case in this court. See Farmers' & M. Nat. Bank v. Davis, 8 N. D. 83, 76 N. W. 998."

In the latter case the court said on page 86, "In cases where the appellant desires to have reviewed only certain particular facts, that such facts must be pointed out or specified in the statement; and, where the appellant desires to retry the entire case in this court, it is incumbent upon him to specify or state that fact in the settled statement of the case. But we are likewise of the opinion that the act of 1897 has entirely superseded the requirements of § 5630 and of article 8 of chapter 10 of the Revised Codes, relating to the specification of errors of law, and of the particulars wherein findings of fact are not justified by the evidence. Under the amendment we are considering such specifications as are required by former statutes and by the rules of this court are no longer required in actions tried below without a jury, and which come to this court for a retrial upon the merits."

In this particular the statute has not been amended since 1897. This decision is practically in the terms of the statute itself, viz.:

"A party desiring to appeal from a judgment in any such action, shall cause a statement of the case to be settled within the time and in the manner prescribed by article 8 in chapter 11, Compiled Laws of North Dakota for the year 1913, and which specify therein the questions of fact that it desires the supreme court to review and all questions of fact not so specified shall be deemed on appeal to have been properly decided by the trial court. Only such evidence as relates to the questions of fact to be reviewed shall be embodied in this statement."

This provision applies to cases where it is not necessary to bring up the entire record for review, but only a part of it, and it is incumbent upon appellant to specify the questions of fact that he desires the court to review, and only the evidence which relates to the questions of fact specified are included in the statement. But this provision does not apply, where appellant desires and demands a retrial of the entire case. In such case the following provision of the statute applies, "but if the appellant shall specify in the statement that he desires a review of the entire case, all the evidence and proceedings shall be embodied in the statement." In such case, appellant does not specify any particular facts, but complies with the statute when he specifies in the

statement that he desires to review the entire case. It is then incumbent upon the supreme court to review the entire record and try anew all the questions of fact in the entire case and dispose of the same whenever justice can be done without a new trial. Since the appellants demand a retrial of the entire case, the specifications of error were not necessary.

Appellant contends that there is another action pending, by the same parties, in the same court, for the same cause. The question is raised by answer, as it does not appear on the face of the complaint and could not be raised by demurrer.

It developed at the trial that on the 27th day of February 1917, Sarah Kittelson for herself, and on behalf of these pliantiffs, brought an action to determine adverse claims to the property involved; that on August 14, 1923, the plaintiff through another attorney brought an action against the defendants, John Larson and John Kittelson, to determine adverse claims to the N. E. ¼ of section 19 T. 145, R. 53. Neither action was ever tried, but the last one was dismissed during the trial of this action, and after the trial had been in progress for several days. It is the contention of the appellant that the action abates.

In the case of Golly v. Northland Elevator Co. 53 N. D. 564, 207 N. W. 438, the court said: "It is elementary that the pleading of another action pending presents matter in abatement merely, and not in bar. First State Bank v. Osborne-McMillan Elevator Co. 53 N. D. 551, 207 N. W. 37; 37 C. J. 1162."

In the case of Chapman v. Moore, 151 Cal. 509, 121 Am. St. Rep. 130, 91 Pac. 324, relied upon by appellant, one Strohm and his wife were two of the defendants. They pleaded in abatement another action pending, which was the first issue tried by the court. At the conclusion of the testimony on that issue the action was dismissed as to the Strohms. The court said: "The showing was sufficient to sustain the plea and upon it the Strohms were entitled to have the subsequent action against them abated," as the former action had not been dismissed.

1 Cal. Jur. § 17, p. 37, states the rule as follows:

"If the court, upon a consideration of the proof adduced, finds that

another action is pending between the same parties and for the same cause, its judgment should be that the action abate. . . . But the defense of another action pending does not authorize a judgment on the merits of the case. Hence the court should not give a general judgment in favor of the defendant, nor a judgment that the plaintiff take nothing by his action. . . ."

In other words, if it appears from the showing made that there is another action pending, the action abates. If the other action is tried and judgment is entered it is a bar to the subsequent action. If it is dismissed without prejudice the abated action may be revived. In the case at bar, in addition to defendant's plea of abatement, they had answered on the merits, had proceeded to try, and had been trying the case for several days when the former action was dismissed. They were apparently ready for trial and we do not see how they were prejudiced by the overruling of the motion to dismiss on the ground that there was another action pending, when the former action had been dismissed. There was no error in overruling the motion.

In January 1904, John Kittelson was the owner of the lands in dispute, although at that time the title was not in him, but was soon after acquired. There was some trouble between John Kittelson and Sarah Kittelson, the parents of the plaintiff's, and they went to the office of George H. Phelps, a lawyer at Fargo, told him their troubles, after which they left his office, and after they were gone Phelps called his stenographer and dictated an instrument for them to execute. Phelps testified, that he drew an agreement for them relating to a separation, a property agreement, some agreement as to the care of some minor children. "And as I recollect it, I did take their acknowledgment, I do not remember that I signed as a witness. I delivered them to Mr. and Mrs. Kittelson, my recollection is, I gave to Mr. Kittelson and one to Mrs. Kittelson. I could not identify this instrument (exhibit 2) as the instrument I can't say whether the kind of paper 'exhibit A' is written on was used in my office, the file cover bearing the name, George H. Phelps, attorney at law, is such as we use in the office. My recollection is that I gave the original to one, and a copy to the other, but that is twenty-three years ago and I can't say definitely. I do not know which one of them stated the terms of the agreement. I did not advise them. I have no recollection as to whether they were

executed in duplicates. I do think I recollect that they were separating as husband and wife."

Bertha J. Miller, the stenographer, testified, that she was Mr. Phelps' stenographer and occupied a small room, partitioned off from the main office just large enough to hold a typewriter desk, that she was present part of the time and heard a part of the conversation. "Mr. and Mrs. Kittelson went out, and then the agreement was dictated, I heard partly what they said to Mr. Phelps. It would be hard for me to say what was said it is so long ago. Mr. Kittelson was doing most of the talking. Ques. Did you hear Mr. Phelps talking about what was to be contained in that agreement the terms of it? Well, I could not say I did, after they left the office Mr. Phelps dictated to me and I took it down and wrote it off on the typewriter. In all cases I made an original and two copies, occasionally I made a duplicate. I think I finished it about lunch time and gave the papers to Mr. Phelps. I did not see Mr. and Mrs. Kittelson again that day. I am not positive if Phelps had the papers right there. Ques. Had they been signed? Ans. Yes, I think that they had been, twenty-three years is a long time to remember those things. I don't know that I did anything with the papers. I don't know what was done with the papers, or whether or not the Kittelsons returned that afternoon. I never saw the contract, nor any copy of it, that is, that one that was signed by Mr. and Mrs. Kittelson since. I couldn't say whether there was more than one signed by the parties. Mrs. Kittelson was meek, yielding and had little to say, tears in her eyes, and acted to me as though she had been intimidated. Mr. Kittelson was strong minded and domineering."

John Kittelson testified: "That before they left home they agreed on the terms of the contract and that two copies were made. Phelps handed me the copy, and gave the original to Sarah. I got the original from Sarah in July or August 1904, it was delivered to me at Ames' office. I destroyed the copy, and then Mr. Ames wanted to see the original that time Barnett had the case up here in Fargo. I have had charge of all this property and paid the taxes on it since 1897, up to the time I sold the farm to Larson. In the contract that we made at Phelps' office she was going to have the use of it as long as she lived, and if she died before me, it was going back to me, and if I was

dead it was going to the children, and I was to have the custody of the children." Handed "exhibit 2" he states, "That is not a copy of the contract." At the time of the making of the contract Tilda K. Plott was ten years old, Emma Kittelson Rock, eleven years old, and Sidney Kittelson was seven years old.

In June 1904, John Kittelson brought an action for divorce against his wife Sarah. The case was tried on the 29th of July 1904, and a divorce and the custody of the children, the plaintiffs herein, was granted to John Kittelson, and said children have remained in his custody, under his care and support from their birth until they grew up and married.

In September 1904, John Kittelson and Sarah Kittelson went to the office of Attorney Ames at Mayville, and after consulting him, Sarah Kittelson executed and delivered to John Kittelson a quit claim deed to the farm land, which was introduced in evidence as "exhibit 4," and also a quit claim deed to the town property which was introduced as "exhibit 5" and turned over to him the contract which was drawn in Phelps' office.

On the 30th of March 1906, Sarah Kittelson made an affidavit that she was granted a divorce from John Kittelson on the 29th of July 1904, that she had thereafter contracted with John Kittelson to do his housework and take care of his children for the sum of $100 a year, and board, that said contract should continue until annulled by either party. On the 23d of August 1911, John and Sarah Kittelson signed another statement, in effect, that there was a dispute between the said parties as to the amount due from John Kittelson to Sarah Kittelson for work and services, and to settle such difference it was agreed that John Kittelson should pay, and had paid to Sarah Kittelson the sum of $600 the receipt being acknowledged in full settlement.

The next contention of the appellant is that the defendant, John Larson, is an innocent purchaser of the property. It is undisputed that in 1921, John Larson purchased the quarter section of land in Cass county for $5,000, but it is claimed, that he had notice of the rights of these plaintiffs by reason of a lis pendens filed in the office of the register of deeds of Cass county, February 27, 1917, but the summons and complaint in the action were never filed with the clerk of the district court, and the action was abandoned.

Bennett on Lis Pendens, p. 376, § 325, states the rule as follows: "The rule of the common law requires that the bill shall be filed before lis pendens could commence. Although the subpœna was served before the bill was filed, yet there would be no lis pendens until the bill was afterwards filed, when lis pendens would commence from the filing of the bill. And so where notices of lis pendens are filed while there is no bill on file they have no effect as constructive notice to third parties until the bill is afterwards filed, when the efficiency of the lis pendens commences. Alterange v. Christiansen, 48 Mich. 60, 11 N. W. 806; Houghton v. Kneeland, 7 Wis. 251; Olson v. Paul, 56 Wis. 30, 13 N. W. 868; Flood v. Isaac, 34 Wis. 423; Butler v. Tomlinson, 38 Barb. 642; Farmers Loan & T. Co. v. Dickson, 17 How. Pr. 477; Benson v. Sayre, 7 Abb. Pr. 472, note; Stern v. O'Connell, 35 N. Y. 104; Gordon v. Tyler, 53 Mich. 629, 19 N. W. 560, 20 N. W. 70; Weeks v. Tomes, 16 Hun, 349; Burroughs v. Reiger, 12 How. Pr. 171; Leitch v. Wells, 48 Barb. 637."

The only change in the common law is the statutory requirement of the filing of the notice in the office of the register of deeds. The statute, § 7425, Comp. Laws 1913, still requires the filing of the complaint or bill in the office of the clerk of the district court. The office of the notice is to let the world know that there is an action pending, and everybody interested can go to the clerk's office, and there learn the particulars from the complaint or bill.

"According to the general accepted view lis pendens is notice of all facts apparent on the face of the pleadings, and of those facts of which the facts so stated necessarily put the purchaser on the inquiry." 17 R. C. L. § 7, p. 1014.

"The doctrine of lis pendens, although well settled, is in all the reported cases admitted to be harsh, and justifiable only on the ground that individual rights must sometimes be made to yield to rules established for general convenience. By its operation a purchaser who has advanced his money in good faith may acquire no rights from his purchase. Such a doctrine is not a favorite one with the courts; it will not be extended without strict necessity, and will be strictly construed." 17 R. C. L. § 6, p. 1013.

In the case at bar, the complaint was never filed in the office of the clerk of the court, as provided by § 7425, Comp. Laws 1913, and the

notice of lis pendens never became operative, and there was no constructive notice to Larson.

In his memorandum opinion, the trial judge says, "There is some evidence that he, (Larson) was warned by the mother or children, that the plaintiffs claimed an interest in the land." Apparently the trial court was not favorably impressed with the testimony relating to actual notice and based his conclusions on the filing of the notice of lis pendens. Now as to the evidence of actual knowledge, when the plaintiff, Emma Kittelson Rock, was upon the stand she was asked this question: "Do you remember the occasion in the early part of the year 1909, when you were present at your father's home, your mother and John Larson also being present; and that he said to your mother I would like to buy this N. E. ¼ of 19 and come down there and live, and your mother said to him, I have only a life estate in that land, after my death it goes to the children." Ans. "Yes." Ques. "Do you remember hearing her say those words at that time and place?"

Ans. "Yes I do." Ques. "And did that conversation take place on the part of your mother?" Ans. "Yes." These leading questions were permitted over objections upon the theory, that they were impeaching questions. John Larson was asked the same questions and answered in the negative. But why should John Larson talk to Mrs. Kittelson about buying this land? It was in John Kittelson's name, he was working it, paying taxes on it, and Mrs. Kittelson if she was there at the time, was there at sufferance, working for wages, and why should Mrs. Kittelson tell John Larson that she had a life estate in the land when she knew that she did not have, when she knew that she never had complied with any of the conditions of the contract, and that she went with Mr. Kittelson to Mayville a few months after the contract was made, before it ever became operative and rescinded the contract by deeding all the property to John Kittelson. In her cross-examination she doesn't know when this conversation took place whether it was in the fall or in the spring. She does not know whether it was early in the year 1909, or whether it was in some other year. She was asked how old she was at the time, and she said she hadn't figured that up. She was given time to figure it up and she said she was twelve years old at the time. If she was twelve years old at the time it must have happened in 1904, or 1905, for she was born in 1892. John

Larson's attention is directed to a conversation had in the early part of 1909, and to no other conversation. Since the witness, Emma Rock, does not even know the year, the impeachment fails, and such leading questions were incompetent for the purpose of proving notice. '

Appellant's next contention is that "exhibit 2" has not been identified as the contract that was entered into by John and Sarah Kittelson in Phelps' office on the 21st day of January, 1904. The evidence of the identification is not very satisfactory, but assuming that "exhibit 2" is a copy of the identical document, what is it? Appellant claims that it is an executory contract, and plaintiffs claim that it is an executed contract. No one has called it a deed, Mr. Phelps speaks about the instrument that he drew as an agreement. Witness Bertha J. Miller who wrote it calls it a contract. It is as follows, to wit:

"THIS MEMORANDUM of Agreement, Made and entered into this 21st day of January, A. D. 1904, by and between John Kittelson, party of the first part and Sarah Kittelson, party of the second part.

WITNESSETH That for and in consideration of the mutual covenants and agreements of the said parties hereto, each make the following covenants and agreements.

The said John Kittelson hereby gives, grants and conveys to the said Sarah Kittelson the following real estate, to-wit:

Lot Nine (9) in Block Twenty-four (24) in the original Townsite of Galesburg, in Trail County, North Dakota, according to the certified plat thereof as filed in the office of the register of deeds of said Trial County; And the North East Quarter (NE$\frac{1}{4}$) of Section Nineteen (19) in Township One Hundred Forty-three (143) North of Range Fifty-three (53) West in Cass County, North Dakota, to have and to hold the same and to enjoy all the rents, incomes, profits and benefits therefrom for and during the period of her natural life, provided said Sarah Kittelson do not again marry and in case the said Sarah Kittelson should again marry, all rights by her acquired in any by virtue of this agreement shall thereupon and immediately cease and terminate and at the death or remarriage of the said Sarah Kittelson, the title to said property is hereby vested in fee simple, absolute, in Elmer Kittelson, Emma Kittelson, Tilda Kittelson and Sidney Kittelson, children of said John Kittelson and Sarah Kittelson, or to the survivors of them in undivided equal parts.

It being understood that title to the above named property is not now in the name of John Kittelson and that this agreement shall not become operative until title thereto is fully vested in said John Kittelson and said property is free and clear of all incumbrances.

The said Sarah Kittelson hereby covenants and agrees to release the said John Kittelson from all claim which she now has, or may have hereafter against him, for her care, nurture, support and maintenance during the remainder of her natural life and hereby releases any and all right, title and interest which she may now or hereafter have in and to all property now belonging to said John Kittelson and to any and all property which he may hereafter acquire; and she hereby releases and relinquishes all right, title, interest, claim and demand in and to any and all estate of which the said John Kittelson may die seized and possessed.

The said Sarah Kittelson hereby assumes full charge care and custody of the said Elmer Kittelson, Emma Kittelson, Tilda Kittelson and Sidney Kittelson and agrees to care for, maintain, support, clothe and educate said children during the remainder of their minority, at her own expense, without any claim or demand or right thereto against the said John Kittelson; the said John Kittelson being given the privilege at all reasonable times to visit said children."

The plaintiffs and the defendants call it a contract, and the parties designate it in the instrument itself, not as an article of agreement, but as a memorandum of agreement. A memorandum is defined by Words and Phrases, p. 4472: "As a note to help the memory, as a brief note in writing of some transaction or an outline of some intended instrument; an instrument drawn up in brief and compendious form." It is defined by Webster's Dictionary: "As an informal record of something which it is desired to remember or to preserve for future use; as an outline of an intended instrument, an instrument drawn up in brief and compendious form." It states, that "for and in consideration of the mutual covenants an agreement of said party hereto, each makes the following covenant an agreement." This was not a gift, an advancement nor a settlement, The consideration to John Kittelson is a release from all claims of Sarah Kittelson for support and maintenance, and for the support and maintenance of the children; the said Sarah Kittelson agreeing and assuming full charge of, and

for the care, custody of the said Elmer Kittelson, Emma Kittelson, Tilda Kittelson and Sidney Kittelson and agrees to care for, maintain, support, clothe and educate such children during the remainder of their minority, at her own expense without any claim or demand, or the right thereto against the said John Kittelson. This is the consideration, and it was all payable in the future.

Under § 5921, Comp. Laws 1913: "An executed contract is one, the object of which is fully performed. All others are executory."

The object of this contract was to care for the children, and as it could only be performed in the future it is clearly an executory contract.

Everything that it required Sarah Kittelson to do, is to be done in the future.

In the case of Shirley v. Shirley, 59 Pa. 267, the father by writing agreed to give his son his plantation, to farm, likewise the horses, etc., to enable them to carry on farming during his life to manage the same to the best advantage for themselves to pay all taxes, etc., in consideration the sons agreed to bind themselves to keep the father and his wife, in everything needful for their comfort, etc., during their lives and to pay the father's debts. The court said, "The instrument claimed by plaintiffs to be an executed conveyance is in our opinion simply a contract by which the latter was to farm the land and furnish Thomas Shirley, Sr. and wife with a comfortable maintenance during their lives . . . the parties have denominated it an article of agreement and it contains covenants to be performed by both parties and is signed by both." The court further said, "Courts, in my opinion, should be slow to give effect of absolute conveyance to instruments for provisions made between parents and children, of the kind of which we are speaking, unless the intention be very clear. Such agreements are usually fruitful sources of strife, litigation, and very often of great wrong to aged and feeble parents, and when held to be absolute conveyances it puts them entirely at the mercy sometimes of unwilling and often unkind offspring."

In the case of Stewart v. Lang, 37 Pa. 201, 78 Am. Dec. 414, it is held: "That an informal instrument called by the parties an agreement, expressed to be in consideration of further covenants to be done and performed and with no present sum in hand paid, containing no

words of inheritance, and without the formal acknowledgment of a deed was held to be an executory contract and not a present conveyance, though it contained words of present assurance 'doth' and 'hath' 'by these presents granted, bargained, sold and forever quitclaimed.' " This case is very similar to the case at bar, except, that the instrument was not acknowledged.

"Accordingly, an instrument will be held to be an executory contract where it is not styled a deed or a conveyance, is in the nature of an agreement, is of informal character, does not disclose an effort to adopt the orderly parts of the conveyance, is not under seal and bears upon its face distinct marks of executory contract, or where the instrument containing words of present purchase is signed by both parties, provides for conveyance on the happening of a future contingency, or where though containing words of present assurance, it is informally drawn, called by the parties an agreement, expressed to be in consideration of things to be done in the future, without present payment of cash, contains no words of inheritance, and is not formally acknowledged as a deed." 8 R. C. L. 929.

In Jackson ex dem. Ludlow v. Myers, 3 Johns. 388, 3 Am. Dec. 504, the court after quoting a number of cases said: "These cases sufficiently establish the rule of construction, that though a deed may in one part use the formal and apt words of conveyance, yet if, from other parts of the instrument taken and compared together it appears that a mere agreement for a conveyance was all that was intended the intent shall prevail."

In Scott v. Woodworth, 34 Cal. App. 400, 167 Pac. 543; the court said, in reference to such contracts: "In the first place, it is to be noted that it is signed by the second party as well as by the first party. A deed is required to be signed by the grantor only, and the fact that all the parties signed it and that it was designated in the instrument as an agreement by the parties themselves is clearly indicative of an intention in them that it should be something other than a deed."

"Exhibit 2" purports to be signed by both parties; it describes two separate properties, one, a house and lot in Traill county, and one a farm in Cass county, in the one instrument. Both properties could be conveyed in one instrument, but inasmuch, as one is farm property, and one town property and located in two different counties, it

would be very unusual to convey both in one deed. Such an instrument then would have to be recorded in both counties. The usual practice would be, if a conveyance was intended to make two deeds so that each could be recorded in its proper county. "Exhibit 2" was never recorded, and there is not a word in the record which indicates that it was to be recorded.

It is undisputed that John and Sarah Kittelson went to Phelps' office, told him their agreement, then left the office and in their absence Phelps called his stenographer who took the dictation, transcribed it into typewriting; that when John and Sarah Kittelson returned Phelps was there alone, that he handed the copy to John Kittelson and the original to Sarah Kittelson, that there is no evidence that the instrument was read to, or explained to them; that they took the instrument and went home; that nothing was ever done under the contract, the children never left the home of John Kittelson, he retained their custody, cared for them, educated them until they grew up and got married, and in September, 1904, John and Sarah Kittelson went to the office of Lawyer Ames at Mayville, and rescinded whatever contract had been made by the execution and delivery of the two deeds to said property, "exhibits 4 and 5."

It is well settled that in determining the intent of the parties to a contract resort may be had to the acts of the parties themselves, how have they treated the contract, and what did they have in view when it was executed? Warvelle, Vendors, § 108. The parties never treated the instrument as a deed, and in her complaint in the action which Sarah Kittelson brought in 1917, she alleges, "prior to securing a divorce in 1904, the defendant entered into a certain contract a copy of which is hereto attached and made a part hereof (the copy attached is a copy of 'exhibit 2') that among the conditions of said contract and as a consideration therefor the plaintiff herein agreed to maintain, nurture and support and educate their four minor children and to care for and have the custody and control thereof . . . that as a part consideration for said nurture and support of said children, this defendant agreed to deed or transfer to this plaintiff for her use and benefit during her lifetime the N. E. $\frac{1}{4}$ of sec. 18, 143, 53, and at her death or remarriage said property and the title thereto was to vest in the children of the plaintiff and defendant, that notwithstand-

ing said agreement and the performance by the plaintiff herein of her part thereof this defendant has refused and still refuses to transfer said land to this defendant for her benefit during her lifetime or for the benefit for the children thereafter. Wherefore plaintiff prays judgment requiring and compelling the defendant to immediately deed and transfer the said N. E. $\frac{1}{4}$ of sec. 19, 143, 53, to this plaintiff for her benefit during her lifetime or so long as she shall remain unmarried, and that at her death, title to vest in fee simple in the heirs above recited to wit, Elmer Kittelson, Emma Kittelson, (now Emma Rock) Tilda Kittelson and Sidney Kittelson." This complaint is sworn to by Sarah Kittelson, and proves that she thought the agreement was an executory contract; and we are of the opinion that the court should treat the contract and construe it as the parties themselves did, as they not only construed it, but operated under it for years. We accordingly hold, that the agreement under which the parties operated was an executory contract until it was rescinded in September, 1904, that subsequent to that time they operated under an oral agreement by which Sarah Kittelson worked for John Kittelson for wages.

Assuming that "exhibit 2" is the agreement executed by John and Sarah Kittelson on the 21st day of January, 1904, we hold, that it is an executory contract made for the benefit of the children of the said John and Sarah Kittelson, that said parties never operated under said agreement; that it never became operative; that the consideration therefor wholly failed, and that said contract was rescinded by said parties on the 19th day of September, 1904, more than twenty years before the third parties for whose benefit it was made, attempted to enforce it.

The judgment is reversed and the action ordered dismissed.

BIRDZELL, NUESSLE, BURR, and CHRISTIANSON, JJ., concur.