LUCY I. DES BRISAY & another *vs.* EUGENE N. FOSS.

Suffolk. December 2, 1927.— June 12, 1928.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Pleading, Civil,* Replication. *Frauds, Statute of. Deceit.*

Where the plaintiff in the declaration in an action of contract or tort alleges, in a count in contract, breach of a promise either to remodel certain premises so as to fit them for use as a hospital, or to erect a modern hospital building in their stead and to lease or secure leases for a term of twenty years, or to lease the remodelled or newly erected buildings to a corporation to be formed by the plaintiff; and, in a count in tort, alleges a false representation that the title to the property was good, when, in truth, it was so encumbered by restrictions that the premises could not be occupied for a hospital; and the defendant in his answer relies on a general denial and the statute of frauds, the plaintiff is not entitled to file a replication which seeks to set out in substance facts already stated in the declaration and asserts that they estop the defendant to rely on the statute of frauds by reason of the circumstances under which the contract relied on in the first count of the declaration was made, and that, in equity, the plaintiff was entitled to be absolutely and unconditionally relieved against such defence.

A real estate agent, representing the owner of certain real estate in negotiations with respect to its sale or lease to a partnership who sought to use it for hospital purposes, signed in his own name and sent to the partnership a letter enclosing a "possible corporation layout" and printed pamphlets "of the real estate holding trust which we have named the R. Hospital Real Estate Trust." The letter stated: "You will notice . . . that the purchase price is put down as $160,000. This may be $5,000 less but need not change raising of the $80,000. You will also notice that the rent we placed at $18,000 net, the Hospital to pay in addition all taxes, insurance and repairs. This increase is made necessary in order to show a return on $80,000 trust certificates." The prospectus gave the location of the real estate. In an action of contract by the partnership against the owner for breach of an alleged agreement to sell the real estate to the plaintiffs, the plaintiffs relied on the letter as satisfying the statute of frauds, G. L. c. 259, § 1. *Held*, that the letter and its enclosures did not satisfy the statute, which furnished a complete defence to the action in contract.

The mere facts, that the partnership failed to renew leases of premises which they were occupying for hospital purposes, conveyed the business to a corporation which they formed for the purpose, broke up their hospital force and ceased doing business while awaiting performance by the defendant, did not warrant a finding of such part performance as in equity would prevent the operation of the statute.

The partnership above described also sought to recover from the defendant in tort alleging a false representation that the title to the property was good, when, in truth, it was so encumbered by restrictions that the premises could not be occupied for a hospital. At the trial, it appeared that the letter above described was sent in August, 1921, and that the plaintiffs formed their corporation in February, 1922, and there was evidence that, at some time before the lapse of time when they might have renewed their leases where they then were doing business, the plaintiffs were told by the defendant's agent as of his knowledge that the title to the premises proposed to be sold to them was good; that by this statement and others in relation to the same subject matter they were led to make no independent examination of the title, and, in the expectation that nothing in that title would prevent the use of the premises for a hospital, were led to neglect to endeavor to renew the existing leases. The plaintiffs learned that the title to the premises was bad about June, 1922. There was no dispute that the representation was untrue. There was no claim that the agent knew it to be untrue. In July, 1922, the plaintiffs, with the defendant's consent, removed their property to the premises in question, where they remained without payment of rent until negotiations for a substituted performance were abandoned. The abandonment was not by reason of the state of the title to the property in question. In February, 1923, they transferred all the partnership property to the new corporation. *Held*, that,

    (1) An agreement binding the defendant did not come into being until the plaintiffs made the conveyance to the corporation;

    (2) In the circumstances the representation then had become immaterial and the plaintiffs were not shown to have been injured by it;

    (3) The action of tort could not be maintained.

CONTRACT OR TORT, with a declaration described in the opinion. Writ dated April 10, 1924.

In the Superior Court, the plaintiffs filed a replication, described in the opinion. A motion that the replication be struck from the record was allowed by *Sisk*, J., and the plaintiffs alleged exceptions.

The action then was tried before *Walsh*, J. Certain interrogatories by the plaintiffs to the defendant were answered as follows:

"10. Did you have any dealings with the firm of J. D. K. Willis & Co., real estate brokers at 50 State Street, in Boston, Massachusetts, with reference to the sale of said property above referred to? They came to see me about it."

"12. Did said firm of Willis & Co. represent you as real estate brokers in negotiating with said George L. Morse with reference to the sale or occupation of said property? They did.

"13. Did said firm of Willis & Co. as real estate brokers represent you in negotiations with said George L. Morse for erecting a hospital on said property to be occupied by the Des Brisay Hospital? I do not understand that they did.

"14. Did you know Allan S. Farwell in the fall of 1921 and winter of 1922 and was he connected with the office of said firm of Willis & Co. at 50 State Street in said Boston? Yes."

"16. Did you have any dealings with said Farwell as the representative of Willis & Co. with reference to selling the property above referred to on Charlesgate East and Beacon Street to the plaintiffs, George L. Morse and Lucy I. Des Brisay, for the Des Brisay Hospital? I did.

"17. Did said Farwell represent you in behalf of Willis & Co. in any dealings with the plaintiffs with reference to their occupancy of said property last referred to by the Des Brisay Hospital? He did.

"18. If you answer interrogatories 16 and 17 or either of them in the affirmative, please state fully what your dealings with said Farwell were and give your conversations with said Farwell in full with regard thereto. I discussed leasing and selling with Farwell.

"19. Did you have any talk or correspondence with said Farwell or said firm of Willis & Co. with reference to a cut or representation of a proposed hospital on said property on Charlesgate East and Beacon Street?　No."

"22. Did you discuss a plan with said Farwell or Willis & Co. whereby said property or the greater portion thereof should be conveyed to a real estate trust, and if so state fully all that was said by you to them on that subject.　No.

"23. Did you discuss a plan with said Farwell or said firm whereby the plaintiffs, George L. Morse and Lucy I. Des Brisay should form a corporation to be known as 'Des Brisay Hospital, Inc.,' or some similar name, and should occupy a hospital to be erected on said property above referred to, and if so state fully all that was said by you to them with reference to such a plan?　No."

A letter, relied on by the plaintiffs as satisfying the requirements of the statute of frauds, was as follows:

J. D. K. WILLIS & Co.

August 29, 1921.

Mr. G. L. Morse,

　c/o Des Brisay Hospital,

　　#38 Newbury Street,

　　　Boston, Mass.

My dear Mr. Morse:—

We are sending you an idea of the possible corporation layout of the real estate holding trust which we have named the Riverbank Hospital Real Estate Trust.

On Page #1 the trustees are left blank as we suggest that some of your doctors who might take subscriptions of $10,000 or over might like to serve on this board. You understand that these trustees have nothing to do with the Hospital, they are simply managing trustees of a real estate trust, all they do is collect rent and pay mortgage interest and dividends.

We suggest that you insert on Page #2 any details and facts that might put enthusiasm into the doctors and your star patients. We also believe that a fancy cut should be made by the architect showing about what the building

will look like and have one of these cuts attached to each prospectus.

You will notice on Page #4 that the purchase price is put down as $160,000. This may be $5,000 less but need not change raising of the $80,000. You will also notice that the rent we placed at $18,000 net, the Hospital to pay in addition all taxes, insurance and repairs. This increase is made necessary in order to show a return on $80,000 trust certificates.

We are leaving a vacant page so that your doctors and friends and interested patients may sign their names and put beside each one the amount that he subscribes.

> Yours truly,
> J. D. K. Willis & Co.

AW/F

P. S. If 2d mortgage is $50,000 it will only take 13 years to pay it off, so that $5,800 set aside per year for payment of principal and interest will amount to over 40,000 during the last seven years of the lease. This can be used to pay down on 1st mortgage or set aside for surplus or to purchase trust certificates.

Other material evidence is stated in the opinion. At the close of the evidence, the judge ordered verdicts for the defendant on both counts of the declaration. The plaintiffs alleged exceptions.

*W. R. Bigelow*, for the plaintiffs.

*L. A. Mayberry*, (*R. Gallagher* with him,) for the defendant.

WAIT, J. The plaintiffs sue in contract or tort.

The count in contract alleges breach of a promise either to remodel certain premises on Charlesgate East in Boston so as to fit them for use as a hospital, or to erect a modern hospital building in their stead and to lease or secure leases for a term of twenty years, or to lease the remodelled or newly erected buildings to a corporation to be formed by the plaintiffs. The count in tort alleges a false representation that the title to the property was good, when, in truth, it was so encumbered by restrictions that the premises could not be occupied for a hospital.

The counts, necessarily, are for a single cause of action;

otherwise they could not be joined in a single action at law. The recovery actually sought is for all loss to the plaintiffs resulting from action which they took in consequence of the representation, and of the promised performance of the defendant's undertaking. The answer pleaded a general denial and the statute of frauds.

The plaintiffs filed a replication, setting out, in substance as stated in the counts of the declaration, the circumstances surrounding them when the alleged contract was made, as well as the action taken by them in reliance upon it, and claiming that the defendant was thereby estopped to set up the statute of frauds as a defence; and that, in equity, the plaintiffs were entitled to be absolutely and unconditionally relieved against such defence. On motion this was struck from the files. A bill of exceptions presents the propriety of this ruling for determination.

There was no error in the ruling. No new facts were set up in the answer. No replication was necessary. The facts alleged in the replication afford as full relief at law as they would in equity and, therefore, G. L. c. 231, § 35, which authorizes a replication setting up an equitable defence, is not applicable. *Comstock* v. *Livingston*, 210 Mass. 581. Moreover, the plaintiffs at the trial had such benefit as the facts alleged furnish. They were not prejudiced.

A second bill of exceptions to rulings made at the trial to a jury is also before us. At the trial there was evidence that the plaintiffs, who as partners had carried on a successful private hospital in leased premises on Newbury Street in Boston and whose leases would expire on August 1 and 31 of 1922, understood that they could renew their leases if they so notified the landlords before July, 1922; but they desired to secure larger and more modern accommodations. In searching for suitable premises, sometime in August of 1921, they applied to real estate brokers who eventually introduced them to the defendant, the controlling owner of premises of the Suburban Realty Corporation on Charlesgate East and Beacon Street in Boston. The buildings, as they stood, were not suitable for hospital uses. It was proposed that the defendant remodel them or build a modern hospital building

on the land, and that the plaintiffs form a corporation to take over their existing business, to lease or purchase the land with the new or remodelled structure, and there to carry on a private hospital. Plans for buildings were proposed and discussed and efforts were made to interest others in a hospital trust for financing the business; but no remodelling or construction was entered upon by the defendant in spite of urging by the plaintiffs. In February of 1922 the plaintiffs organized "Des Brisay Hospital, Inc.," a corporation under the laws of the Commonwealth, to own or lease and to carry on the hospital contemplated. They stated to the brokers that the location was satisfactory and they were willing to consider securing it, but that they must be sure they could have the property secured for their use and the buildings put up without expense to them, as they must notify their present landlords whether they would renew their leases. They asked whether the title were good and were told that it had been recently examined and was good — that it would be to waste time and money to have it re-examined. In reliance on these statements they made no investigation thereof. They notified the landlord at Newbury Street that they would not renew the existing leases, and, under date of February 20, 1922, new leases were made to another tenant to take effect from and after August 1, 1922. The existing leases contained no covenants for renewal. Such right as the plaintiffs had to renew, if any, rested upon oral promises. Rent had not always been paid promptly, and arrears existed at the time of the early negotiations with the defendant.

In April, May or June of 1922, the plaintiffs were informed that the title to the Charlesgate premises was encumbered by restrictions, and that the land could not be used for hospital purposes. Considerable time and effort was expended by the plaintiffs in endeavors to secure the release of the restrictions but without success. The defendant offered for the plaintiffs' consideration other property in which he was interested situated upon Audubon Road. Other plans for hospital buildings on those premises were prepared and renewed efforts to finance the business were made, but without

successful result. About July of 1922, with the defendant's consent, the plaintiffs removed their property to the premises on Charlesgate East, where they remained without payment of rent until negotiations were abandoned. On February 12, 1923, they transferred to the corporation all personal property theretofore used in their hospital business with all the good will of their partnership and the right to use the name "Des Brisay Hospital." In April of 1923 they notified the brokers that they would "call it quits" and would not wait longer, and removed their goods to Corey Hill in Brookline where they planned to carry on a hospital; but, upon notice of a purposed change in a zoning ordinance prohibiting such use of the premises, they abandoned their purpose. Since August of 1922, the plaintiffs had done no business in conducting a hospital. In May, 1923, the Suburban Realty Corporation sold the premises on Charlesgate East. The defendant denied making the promises alleged. No agreement in writing was made by the parties and no memorandum in writing was put in evidence, unless it be that a certain letter of the real estate agents to the plaintiff Morse with an enclosed draft for a prospectus to be issued to obtain financial support for the hospital constitutes such a memorandum.

A memorandum to satisfy the statute of frauds need not be a formal document intended to serve as a memorandum of the contract; but it must contain the terms of the contract agreed upon — the parties, the locus (if an interest in real estate is dealt with), in some circumstances the price, *Bogigian* v. *Booklovers Library*, 193 Mass. 444, and it must be signed by the party to be charged or by some one authorized to sign on his behalf. *Riley* v. *Farnsworth*, 116 Mass. 223. *Forman* v. *Gadouas*, 247 Mass. 207, 212, 213.

The papers before us do not meet these requirements. It is impossible to obtain from them the terms alleged to have been agreed upon. The language shows that the $160,000 named as a price is not the agreed price. The cost of the land "may be $5,000 less." The rental, $18,000 a year, is merely suggested, and clearly has not been agreed upon. The purchaser there proposed — the "Riverbank Hospital Real Estate Trust"— never came into being.

Moreover, there is nothing in them to show that J. D. K. Willis & Co., in signing the letter, were acting for the defendant. It is fully as reasonable to regard them as agents for the plaintiffs presenting the proposition as a suggestion wholly for the benefit of the plaintiffs who are to complete and issue the prospectus. The statute of frauds, G. L. c. 259, § 1, thus furnishes a complete defence to the count in contract which, in substance, seeks to enforce a contract for the sale of an interest in or concerning land.

We find nothing which precludes the defendant from pleading the statute. If we assume that the plaintiffs failed to renew their leases at Newbury Street, conveyed their business to a corporation, broke up their hospital force and ceased doing business while awaiting performance by the defendant, all this is a natural consequence of failing to obtain the writing called for by the statute. This is not such part performance as in equity would prevent the operation of the statute. *Glass* v. *Hulbert*, 102 Mass. 24. *Tracy* v. *Blinn*, 236 Mass. 585. *Taber* v. *Shields*, 258 Mass. 511. *Linsky* v. *Exchange Trust Co.* 260 Mass. 15. There has been no benefit received by the defendant which he is enabled to retain by using the statute as a defence. The circumstances differ essentially from those which, in *Williams* v. *Carty*, 205 Mass. 396, *Peoples Express, Inc.* v. *Quinn*, 235 Mass. 156, and *Curran* v. *Magee*, 244 Mass. 1, led to a different result.

The statute of frauds is not a defence to the cause of action in tort. The representation alleged to be false, fraudulent and injurious does not relate to the "character, conduct, credit, ability, trade or dealings of any other person"; and so is not within G. L. c. 259, § 4, the only provision of that statute which deals with false representations. The trial judge directed a verdict for the defendant upon the tort count. This order can be sustained only if there were no evidence which would support a verdict for the plaintiffs. There was evidence which would support findings that, before the plaintiffs formed the new corporation and before the time within which they might have renewed their leases at Newbury Street, they were told by the agent of the defendant authorized to negotiate for him that the title to the

premises on Charlesgate East and Beacon Street was good; that by this statement and others in relation to the same subject matter already stated in this opinion they were thus led to make no independent examination of the title, and, in the expectation that nothing in that title would prevent the use of these premises for a hospital were led to neglect to endeavor to renew the existing leases. There is no dispute that the representation was untrue. There is no claim that the agent knew it to be untrue. It is settled law, however, that an untrue statement made as of the knowledge of the speaker may be actionable although he is ignorant of the falsity, if the other elements necessary to an action for deceit are present. *Bates* v. *Cashman,* 230 Mass. 167, 168, and cases cited. Those other elements are that the statement is made to influence the action of the plaintiff, that it is material, and that he acts upon it to his hurt. *Litchfield* v. *Hutchinson,* 117 Mass. 195. Manifestly the statement could be found to be intended to influence the plaintiffs' conduct; but was it material and harmful? Unless a party suffers injury from a wrong he has no remedy by action of tort. *Goodwin* v. *Dick,* 220 Mass. 556.

If, as the declaration alleged, the contract was unilateral, the defendant was not bound until the plaintiffs did the acts, the doing of which constituted the consideration and rendered the agreement binding. They formed the corporation February 28, 1922. The jury could have found that the representation then had been made, although the exact date is in controversy. But they did not make the conveyance to the corporation, also essential to a binding contract, until nearly a year later, February 12, 1923. The agreement, thus, did not become a binding contract till long after they knew that the representation was false. They had learned of its falsity, and they had continued their negotiations for a substituted performance upon other premises unaffected by the representation. They did not abandon negotiations because of the state of the title at Charlesgate East. Instead they did the remaining act essential to any contractual claim on the defendant, understanding that the hospital thus secured to them would be located elsewhere than at Charlesgate

East. There is no allegation and no proof that giving up the chance of renewal of their leases was contemplated as consideration or part consideration for the defendant's promise.

In these circumstances the representation had become immaterial, and the plaintiffs cannot claim that they were injured by it. It follows that the judge was right in directing a verdict for the defendant. Neither in tort nor in contract do the plaintiffs make out a case.

The rulings on evidence relate merely to questions of damages and need not be considered.

*Exceptions overruled.*