The People of the State of New York, Plaintiff, *v.* Distributors Division, Smoked Fish Workers Union, Local No. 20377, and Others, Defendants.

Supreme Court, Special Term, New York County, September 24, 1938.

*John J. Bennett, Jr., Attorney-General [C. McLenan* of counsel], for the plaintiff.

*Abraham Yarchover [L. P. Goldberg* of counsel], for the defendants.

Pecora, J. The Attorney-General seeks a permanent injunction to restrain the defendants from (1) intimidating and coercing manufacturers or producers of " smoked fish " into selling that product solely to members of the defendant Distributors Division, Smoked Fish Workers Union, Local No. 20377 (hereinafter called " Distributors Division "); (2) from coercing and compelling retail storekeepers, who sell said product, to purchase their supply solely from members of the " Distributors Division;" and (3) from picket-

ing and threatening to picket the places of business of such producers and retailers who failed to comply with the demands of the " Distributors Division."

The action is thus one to restrain an illegal combination alleged to be operating in violation of section 340 of article 22 of the General Business Law (known as the Donnelly Anti-Trust Law). Section 340, in substance, declares to be void and illegal combinations whereby monopolies in the manufacture, production, transportation, marketing or sale of products or services are created, or whereby free competition is restrained or prevented.

Subdivisions 2 and 3 of section 340, however, provide for certain exceptions to the operation of this statute. They read as follows: " 2. The provisions of this article shall not apply to cooperative associations, corporate or otherwise, of farmers, gardeners, or dairymen, including live stock farmers and fruit growers, nor to contracts, agreements or arrangements made by such associations, *nor to bona fide labor unions.*" (Italics mine.) " 3. The labor of human beings shall not be deemed or held to be a commodity or article of commerce as such terms are used in this section and nothing herein contained shall be deemed to prohibit or restrict the right of workingmen to combine in unions, organizations and associations, not organized for the purpose of profit."

In view of these exceptions (See history of exemption of *bona fide* labor union in *American Fur Mfrs. Assn.* v. *Associated F. C. & T. Mfrs.*, 161 Misc. 246; affd., 251 App. Div. 708), the plaintiff would be entitled to the relief prayed for only if the defendant Distributors Division is not a " *bona fide* union." The Distributors Division is an unincorporated association, of approximately 100 members, engaged in carrying on its activities in the counties of New York and Kings, in the city of New York. The defendant Murray Brodsky is the president and the defendant Jack Flaum is the " business agent " of the organization.

The " smoked fish " industry is divided into three branches — the producers, who prepare the fish; the distributors, who act as middlemen in distributing the smoked fish to the storekeepers or retailers, and the latter who sell it to the consuming public. The members of the Distributors Division fall into the category cf those who sell the commodity to retailers at a profit after having purchased it from the producers.

The workers for the producers are known as " inside " or " wet workers." They are organized into the Smoked Fish Workers Union, Local No. 20377, an affiliate of the American Federation of Labor. The defendants claim that " Distributors Division " is not a separate and independent organization but solely an adjunct

of the "Inside" Workers Union. However, the proof showed clearly that there were distinct sets of officers, executive committees and different meeting places, and that no dues were paid by the members of the Distributors Division to the Smoked Fish Workers Union, Local No. 20377. The only identity seems to be lodged in the names of the two bodies. The defendants further claim that the Distributors Division was made an offshoot of the Fish Workers Union pursuant to an aim to have an industrial union in the smoked fish industry.

The evidence, however, convinces me that the Distributors Division is not a *bona fide* union of laborers or workingmen, but merely an aggregation that has taken on the guise and nomenclature of a union in order to obtain an immunity to carry on its activities as an illegal combination to restrain trade and create a monopoly. It was established that the membership of the Distributors Division consisted of merchants engaged in the business of buying and selling smoked fish. In fact, prior to the organization of the "Distributors Division" in January, 1937, much of its membership was banded together in an association of jobbers known as the "Smoked Fish Distributors Association of Greater New York."

In *Stone* v. *Textile Examiners Employers' Assn.* (137 App. Div. 655, at p. 658) DOWLING, J., said: "The ordinary definition of a trade union or labor organization is thus stated: 'A combination of workmen of the same trade or of several allied trades for the purpose of securing by united action the most favorable conditions as regards wages, hours of labor, etc., for its members' (28 Am. & Eng. Ency. of Law [2d ed.], 440); 'An association of workmen usually, but not necessarily employed in the same trade for the purpose of combined action in securing the most favorable wages and conditions of labor' (24 Cyc. 816)." (See, also, Oakes, Organized Labor and Industrial Conflicts, p. 3, § 1; New York State Labor Relations Act [Laws of 1937, chap. 443].)

The Labor Law (§ 701, subd. 5) defines "labor organization" as follows: "The term 'labor organization' means any organization which exists and is constituted for the purpose, in whole or in part of collective bargaining, or of dealing with employers concerning grievances, terms or conditions of employment, or of other mutual aid or protection and which is not a company union as defined herein."

Labor unions are organizations of employees. Employees are those who are compensated for their labor or services by wages, and are not paid by profits. Although both the laborer and the entrepreneur may toil equally, the economic and social difference

between them lies in the method of compensation and return for their toil. One is paid a wage or salary; while the other must look to prospective profits for his remuneration. The Distributors Division is a typical jobbers association. It is not interested in the classical purposes of a labor union, namely, furthering the interest of the worker with respect to higher wages, improved labor conditions, bettering hours of labor, etc. Its interests lay solely in striving to obtain more retail trade or customers for its members so as to increase their profits.

In attempting to accomplish this end, the defendants tried to compel retail storekeepers to buy their smoked fish only from members of the Distributors Division, although there are a large number of other distributors throughout the city of New York. The methods of coercion employed included threats and intimidation and the placing of pickets in front of retail stores whose owners refused to comply with the demands of the Distributors Division. The signs carried by such pickets mentioned the fact that these stores did not purchase their smoked fish from members of Distributors Division, Smoked Fish Workers Union, Local No. 20377. Threats to picket were also made to manufacturers or producers if 'they sold their products to any but members of the Distributors Division. The public was misled thereby into believing that there was a labor controversy, when in fact none existed.

If the Distributors Division succeeded in compelling retailers to purchase only from, and manufacturers to sell only to, its members, the result would inevitably be a monoply with all its familiar attendant evils. The evidence leads reasonably to that conclusion. There was testimony by certain retailers that they paid higher prices to members of the Distributors Division, from whom' they had been compelled to buy, than they did to other non-member distributors.

As stated before, the Distributors Division is not a *bona fide* labor union and has none of the attributes of such an organization. Traditionally a court of equity will look beyond the mere form to discover the substance. Particularly is this applicable here, where an organization has garbed itself in the robes of union immunity, in order to further its illegal purposes. In so disguising itself, such an organization not only injures its competitors, but also tends to discredit the sound cause of union labor. The public is bound to pay the cost of such monopolies, and it will point its accusing finger at this organization which styles itself a " division " of a labor union. Organized labor must be vigilant that it be not made a catspaw for any such schemes.

Let it here be noted that the evidence affirmatively shows that the parent organization — the American Federation of Labor — did not assent to the engrafting of the Distributors Division upon its local, nor was it even consulted about it. The federation was undoubtedly ignorant of the unworthy plan.

Upon the whole case it appears that the injunction prayed for should be granted. Submit findings of fact and conclusions of law.