THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* MURRAY M. GASSMAN et al., Defendants.

Court of General Sessions of County of New York, December 2, 1943.

*Koenig & Bachner* for defendants.

*Nathaniel L. Goldstein, Attorney-General (William F. McNulty, Vincent A. Marsicano* and *Edwin R. Lynde* of counsel), for plaintiff.

*Szold, Brandwen & Shubert* for Amalgamated Clothing Workers of America, *amicus curiæ.*

GOLDSTEIN, J. The defendants made two motions: 1. To inspect the Grand Jury minutes; 2. To dismiss the indictment.

The indictment, which names fourteen defendants, contains seventy-three counts, charging violation of the Donnelly Anti-trust Act (General Business Law, § 340), conspiracy to commit extortion and blackmail, sixteen counts charging extortion and fifty-five counts charging blackmail.

The dismissal of the indictment is sought on the grounds: (1) that the evidence submitted to the Grand Jury is insufficient

in law to charge the defendants with the commission of any crime, and (2) that the acts charged against the defendants, as constituting crimes, were acts committed by the defendants as officials and members of a bona fide labor union and, as such, were *not* subject to action by the Grand Jury.

On the oral argument, as well as in the briefs submitted, it was conceded by the Attorney-General that paragraph 10 of the indictment is the " foundation " of the indictment — if the " foundation " is faulty, the indictment, the superstructure, must fall.

Paragraph 10 of the indictment charges that " The members of said alleged union are persons independently engaged in the business on their own account, duly licensed as such by the City of New York, having no employers, soliciting their own customers and independently engaging in the business of soliciting laundry trade for profit, and that none of the so-called laundry agents who became and are members of said alleged union are employees or have employers, but are engaged in business for themselves and that the said alleged union was not and is not a bona-fide labor union."

The indictment is predicated on the theory that Local No. 324 of the Amalgamated Clothing Workers of America is not a bona fide labor union in that it is an organization of entrepreneurs and not employees.

The Grand Jury minutes and the moving papers disclose the following:

In 1937 the Amalgamated Clothing Workers of America began unionizing the laundry industry by organizing all workers, including agent-drivers, sometimes referred to as independent drivers, into one unit which was chartered as the " United Laundry Workers' Union, Local No. 300 of Amalgamated Clothing Workers of America."

In 1938 the membership of Local No. 300, having grown to over 25,000 — too large for administrative purposes — was split up into ten local unions. Local No. 324 (the only one involved in the indictment) was one of the ten.

Local No. 300, before it was subdivided (into ten locals), was a bona fide union and as such was entitled to the exemption of the Donnelly Antitrust Act (subd. 2). Obviously the subdivisions, made necessary for better administration, have not changed the *bona fides* of the situation.

The membership of Local No. 324 consists, in the main, of agent-drivers whose function it is to collect soiled laundry, convey it to a power steam laundry for processing, and to return

the finished laundry to the customer. For his work the agent-driver receives as commission a percentage of the price paid by the customer for the finished work.

A history of the laundry industry shows that prior to 1930 there were practically no so-called " agent-drivers." When the depression occurred in the early 1930's, some employers in the laundry industry, as well as in other industries such as milk, bakery, and coal, sought to reduce operating expenses by doing away with minimum guaranteed salaries and eliminating the payment of workmen's compensation insurance and vehicle public liability insurance premiums. The method adopted was to convert employee-drivers receiving a fixed salary into agent-drivers to be paid on a commission basis.

At the time of the change some of the agent-drivers acquired their collection and delivery trucks from their employers on a small payment or altogether on credit. In other cases laundry owners helped finance the purchase of trucks by agent-drivers. In many instances it was the laundry owner who insisted upon the new relationship.

The work performed by the agent-driver is substantially the same as that performed by a route driver. Economically, the agent-driver competes with the driver employee of the laundry. His net earnings approximate the salary paid to the employee-driver.

The standard forms of collective bargaining agreement in use between Local No. 324, the Laundry Workers' Joint Board, the Amalgamated Clothing Workers of America, and the employer laundries, denominate the agents or independent drivers as " employees," and the laundries as " employers."

Ownership of the truck by the agent-driver is not a decisive factor in determining his status as employee or entrepreneur. His position is analogous to an employee traveling salesman who works on a commission basis, uses his own automobile in soliciting business, pays for his own insurance coverage, does not punch a time clock, and who is paid for the business he brings in, regardless of the number of hours he works.

Nor is the agent-driver's status as an entrepreneur established by his being licensed by the City of New York. The City also licenses taxicab drivers, barbers and masseurs who work for others. (Administrative Code of the City of New York, §§ 436–2.0, B32–230.0, B32–194.0; L. 1937, ch. 929, as amd.)

In this connection it is pertinent to note that the Workmen's Compensation Division of the New York State Department of Labor has ruled that agent-drivers are employees and not

entrepreneurs. (*Weisman* v. *Bristow Laundry Service, Inc.,* Case No. 38,800,366.)

Further, under date of January 18, 1943, the United States Treasury Department ruled that agent or independent laundry drivers are employees, and required the laundries to withhold the 5% victory tax from the compensation (commission) of the drivers. On August 14, 1943, a similar ruling was made with respect to the 20% withholding tax.

The court is not bound to accept the surface form of relationship claimed to exist between the agent-driver and the laundries. It may look beneath this veneer of the agent-driver system to determine whether, for all practical purposes, the agent-driver is in the same class as the employee-driver. The agent-driver's position is at least a hybrid one. It would be as difficult to classify him " strictly entrepreneur " as it would be to find him " pure employee." If required to make a decision as to his classification, the court would (as did the Workmen's Compensation Division of the New York State Department of Labor and the United States Treasury) classify him as a worker and not as an entrepreneur.

There are other circumstances which are compelling. The fact is that Local No. 324 and its members are an integral part of the laundry industry. Their service provides work within the laundries for the laborers, who are dependent on the activities of the agent-drivers. Co-operation between the agent-drivers and the unions associated with the Laundry Workers' Joint Board is necessary to the attainment of union objectives in the stabilization of the industry.

The degree of co-operation involved is indicated by measures taken to effect co-ordination between the activities of Local No. 324 and the unions associated with the Laundry Workers' Joint Board.

Three of the defendants, William Pucciarelli, Max Rosenthal and Jimmy Messina, are members of other unions affiliated with the Amalgamated Clothing Workers of America who were assigned by the Amalgamated to assist in the organization of Local No. 324. The agreements between the Laundry Workers' Joint Board, the Amalgamated and the laundry owners make specific provision for recognition of Local No. 324, require the owners to register all agent-drivers for whom they process laundry, and restrict agent-drivers from transferring from the power laundry without the prior approval of the Joint Board or the Impartial Chairman.

Furthermore, despite closed-shop arrangements, the agent-driver members of Local No. 324 are permitted, in their spare time, as the vast majority has done, to engage in productive work within the laundries in common with other members of the union.

Surely interdependent working groups may co-operate for their joint interest. That is what these agent-drivers did through Local No. 324 in co-operation with the other nine locals which comprise the Laundry Workers' Joint Board.

Subdivision 2 of section 340 of the General Business Law (Donnelly Antitrust Act) provides that the provisions of the Act shall not apply to the activities of bona fide labor unions.

The Donnelly Antitrust Act is not to be so narrowly construed as to nullify the purpose of the Legislature and to render futile the immunities provided in the Act.

The Legislature, by granting exemption to labor unions from the provisions of the Donnelly Act, clearly indicated that its purpose was to restrain monopolies which are wholly beyond the scope of labor union objectives.

The exemption under the Donnelly Act extends not only directly to the labor unions but to all those in contractual relations with such unions where the purpose is patently in furtherance of legitimate union purposes. (*Am. Fur Mfrs. Assn.* v. *Assoc. F. C. & T. Mfrs.*, 161 Misc. 246, affd. 251 App. Div. 708; *Weitzberg* v. *Dubinsky*, 173 Misc. 350, affd. 259 App. Div. 1008; *Sainer* v. *Affiliated Dress Manufacturers, Inc.*, 168 Misc. 319; *Gold* v. *Kaufman*, N.Y.L.J., Nov. 10, 1942, p. 1414, col. 3.)

If persons genuinely integrated in a particular industry by the character of their work and whose activities are co-ordinated with those of a labor union in attaining legitimate labor objectives, were, by reason of those activities, to become subject to criminal prosecution, then the exemption expressed in the Donnelly Antitrust Act would be illusory and meaningless.

The courts have recognized the right of labor unions to organize agent-drivers. (*Bernstein* v. *Madison Baking Co.*, 38 N. Y. S. 2d 811, affd. 266 App. Div. 839, motion for leave to appeal denied 291 N. Y. 827; *Reiner* v. *Sullivan*, 33 N. Y. S. 2d 77; *Lella* v. *Rubel Corporation*, 25 N. Y. S. 2d 548.)

Conduct which the courts have held to be proper in civil litigation cannot in good conscience be made the basis for criminal prosecution.

The Attorney-General urges that a dismissal of the indictment in the instant case would open the door to illegal activities on the part of unscrupulous groups acting under the guise of labor

unions. The two cases relied upon by the Attorney-General — *People* v. *Distributors Div., Smoked Fish Workers Union* (169 Misc. 255) and *People* v. *Masiello* (177 Misc. 608) — are readily distinguishable from the case at bar.

The courts can and do distinguish between legitimate labor unions and attempts on the part of groups of independent business men to effect monopolies and otherwise illegally restrain trade under the cloak of labor union activity.

Thus, in *People* v. *Distributors Div., Smoked Fish Workers Union (supra)* Mr. Justice PECORA aptly stated: " The evidence, however, convinces me that the Distributors Division is not a *bona fide* union of laborers or workingmen, but merely an aggregation that has taken on the guise and nomenclature of a union in order to obtain an immunity to carry on its activities as an illegal combination to restrain trade and create a monopoly. It was established that the membership of the Distributors Division consisted of merchants engaged in the business of buying and selling smoked fish." And again (p. 258): " As stated before, the Distributors Division is not a *bona fide* labor union and has none of the attributes of such an organization. Traditionally a court of equity will look beyond the mere form to discover the substance. Particularly is this applicable here, where an organization has garbed itself in the robes of union immunity, in order to further its illegal purposes. In so disguising itself, such an organization not only injures its competitors, but also tends to discredit the sound cause of union labor. The public is bound to pay the cost of such monopolies, and it will point its accusing finger at this organization which styles itself a ' division ' of a labor union. Organized labor must be vigilant that it be not made a catspaw for any such schemes."

The *Masiello* case *(supra)* related to an organization of newsstand owners operating under the guise of a labor union, the chief aim of which was the self-improvement of its members without any reference to labor union purposes.

In neither of these cases were the so-called " union's " activities co-ordinated with the efforts of any legitimate and bona fide labor group to improve the standard of working conditions or otherwise attain labor objectives.

A case more nearly approximating the case at bar and which points to the path to be followed in deciding these motions is *Bernstein* v. *Madison Baking Co.* (38 N. Y. S. 2d 811, affd. 266 App. Div. 839, *supra*). This was an action by the union for specific performance of a collective bargaining agreement covering independent jobbers and peddlers who were members of

the union. The defendants, employer bakery corporations, contended that the union was not justified in assuming jurisdiction over " jobbers," as they were not employees but independent contractors, and that the agreement sought to restrict trade, destroy competition and fix prices, and was therefore illegal. The facts concerning the legal status of the independent jobbers and their relationship to the bakeries are almost identical with that of the agent-driver members of Local No. 324. Mr. Justice MILLER, in directing judgment for the plaintiffs, found that the purpose of the plaintiff union was a " lawful labor objective — an activity having some reasonable connection with wages, hours, health, safety, and the right of collective bargaining ", and that the agreement did not contravene section 340 of the General Business Law. The decision in that case was unanimously affirmed by the Appellate Division (266 App. Div. 839) and leave to appeal was denied by the Court of Appeals on November 24, 1943 (291 N. Y. 827).

The moving papers and the Grand Jury minutes clearly establish that the Amalgamated Clothing Workers of America is a labor union with a membership of about 300,000 workers, engaged in the manufacturing, processing, and servicing of clothing and related items of wearing apparel. Local 324, which is involved in this prosecution, was duly chartered by the parent body, the Amalgamated Clothing Workers of America. Its affairs are administered like any other of the local unions affiliated with the Amalgamated Clothing Workers of America. The accounts and finances of the local union are audited periodically by the auditors of the parent body. The local union pays a per capita tax and also turns over a portion of the initiation fee to the parent body. The officers of the local union receive salaries of fifty dollars and less a week in addition to their expense accounts.

All the facts in the case lead to the irresistible conclusion that Local No. 324 is a legitimate organization and not a " racket " as charged by the Attorney-General.

The Grand Jury minutes fail to disclose that Local No. 324 was created for a criminal purpose or that any of the defendants' acts, upon which the indictment is based, were performed with criminal intent. The sixteen counts charging blackmail and the fifty-five counts charging extortion involve the collection or attempted collection of union dues. There is no claim that the dues were used for personal gain as distinguished from union activities.

The collection of dues, whether by a labor union or an association of entrepreneurs, cannot be blackmail or extortion. The felonious intent necessary to sustain a conviction for these crimes is wholly lacking.

On the facts presented and on the law it would be the duty of the Trial Judge to dismiss the indictment and direct a verdict of acquittal.

For the reasons indicated both motions are granted. Settle order on notice.