277 So.2d 868

**Billy Floyd NICHOLS et al.**

**v.**

**Russell BOLDING, Individually and as Mayor of the City of Decatur, et al.**

**Russell BOLDING, Individually and as Mayor of the City of Decatur, et al.**

**v.**

**Billy Floyd NICHOLS et al.**

**SC 119, SC 119–X.**

Supreme Court of Alabama.

May 10, 1973.

Smith & Huckaby, Huntsville, for appellants and cross-appellees.

A. J. Coleman, Decatur, for appellees and cross-appellants.

**54**

JONES, Justice.

Appellants and cross appellees (Firefighters) were plaintiffs below seeking a declaratory judgment against the appellees and cross appellants (City) and appeal from a final decree declaring the rights of the parties thereunder.

We set forth in haec verba the decree issued by The Honorable Newton B. Powell, Circuit Judge, Morgan County, Alabama:

"This cause is submitted by agreement of the parties in open court for final judgment on the pleadings, stipulations and proof. The petition was filed by some individual members of the fire department of the City of Decatur and as members of Decatur Firefighters Association Local 1437, Labor Union, seeking a declaratory judgment as to their rights as petitioners to deal with the governing body of the City of Decatur in the field of labor and management problems. The City, the Mayor and all except one Councilman, individually, and in their official capacity, were made defendants. It is alleged that Decatur Firefighters Association Local 1437 has thirty-seven members in good standing who are employees of the Decatur Fire Department and that this represents 71% of the employees of the Fire Department of the City of Decatur. It is further alleged that representatives of this association proposed a contract relating to wages and working conditions to the defendants. It involves Union recognition, dues collection, pay rates, changes in the merit system and many other things related to the field of labor and management. It is further alleged that a controversy arose between the parties regarding the legal authority of the defendants to enter into such proposed contract with the petitioners—the defendants contending that they could not legally enter into such contract, and the petitioners contending to the contrary. It is further alleged that the defendants declined to negotiate with the petitioners on the subject involved. The respective rights [relating to the questions of labor and management] of the parties have become the subject of controversy. . . . The proceeding is brought under the provisions of Section 156 et seq., Title 7 of the Code of Alabama. On demurrer to the petition as amended the Court eliminated the individual defendants, and left before the Court the individuals in their official capacity as well as the City of Decatur. The Court, also, determined that the demurrer was good to those aspects of the petition seeking an advisory opinion on the question of the right to picketing, dues check-off arrangement between the City and the Association, and some other provisions of the proposed contract over which there does not now exist a controversy, since the question of adopting the proposed contract is at issue. Because the petition was good in part, and the Court considered the demurrer general as to the aspects of the petition, it was overruled. The Court is of the opinion that the substantive law provides that courts should not issue advisory opinions, and that rights of the parties should not be declared on the aspects of the petition calling for an advisory opinion. This leaves the pleadings in the same state as if demurrer had been sustained to these aspects of the petition. The Court will consider the legality of an agreement between the petitioners and the respondents with reference to wages, working conditions, etc., and the related questions as to the extent that the law of the State of Alabama limits the right of the

City and its officials to negotiate and to enter into any such agreement.

"The rights of organized labor to have the governing bodies of governmental units deal with them as an employer is a relatively new field in the law. There is precedent in various jurisdictions on some of the legal questions raised in such controversy. It seems to be established in this jurisdiction that a public governing body cannot enter into a valid labor contract with a labor organization concerning wages, hours, and conditions of employment in the absence of express constitutional or statutory authority to do so. International Union of Operating Engineers, Local 321 vs. Waterworks Board of The City of Birmingham, 276 Ala. 462, 163 So. 2d 619. There has been a division of authority as to whether or not such contracts are permissible. Some have held they are permissible in certain limits if not prohibited by constitutional or statutory impediments. Our Alabama Court has held in the case cited above that there must be authorization by constitution or statute in order to justify such binding contract. In so holding our Court cites as a general rule that public employers cannot abdicate or bargain away their continuing legislative discretion with reference to the subject matter of any labor contract. It is said that public officials have no authority to surrender any of their responsibilities as public officials at a negotiating conference. A similar rule is set out in a note on this subject decided by our Supreme Court in the case cited above. See also 31 A.L.R.2d 1142, at page 1170.

"The case of International Union, etc. v. Waterworks, etc., supra, does not answer the questions presented in this proceeding. It is conceded in argument that the City may not be compelled to negotiate with the petitioners, nor will a labor contract resulting from such negotiations be binding on the public body. It is insisted, however, by the petitioners that though the public officials may not be compelled to negotiate, and though any contract would not be binding upon them, that the defendants are within their legal rights to exercise their discretion in negotiating with the petitioners in an effort to reach an agreement which will be acceptable to both petitioners and defendants, but which will be terminable at the will of the defendants. The case of International Union, etc. vs. Waterworks, etc., supra, was decided in 1964. In 1967 the Legislature of Alabama passed an act which prohibited any person to hold any commission or employment as a firefighter or fireman in the service of the State or any municipality who participates in any strike or asserts any right to strike against the State or any municipality of the State, or be a member of an organization who asserts the right to strike against the State or any municipality in the State knowing that the organization asserts such right. Act No. 229, Approved August 16, 1967, Section 450(3), Title 37, Code of Alabama. The same Act provides that any firefighter within the State who complies with the provisions of the Act cited above is assured the right and freedom to join a labor union and shall have the right to present proposals relative to salaries and other conditions of employment, etc. The parties make no issue of the rights of the petitioners to organize a labor union and be and remain members of the same under the provisions of this Act. It is noted that in 1953 our legislature passed an act which prohibited membership in any labor organization for all public employees, with some exceptions. Section 317, Title 55, Code of Alabama. The change in policy of the State of Alabama as expressed in the 1953 statutes, supra, and the 1967 statute, supra, giving the right to firefighters to organize labor unions and present proposals relative to salaries and other conditions of employment, etc., is a significant change of policy by the State of Alabama in this field in the years between the two acts. Though there is no controversy between the parties as to the right of the petitioners to belong to a labor organization, there is disagreement as to the meaning of the phrase of this Act which provides: '. . . and

shall have the right to present proposals relative to salaries and other conditions of employment by representatives of their own choosing.' Is this the statutory authority for public bodies to deal with labor unions which was referred to in International Union, etc. vs. Waterworks Board, etc., supra? Did the legislature anticipate the firemen who became members of unions and exercised their rights to present proposals relative to salaries and working conditions could not expect the reasonable discussion of these proposals by the public officials to whom they were presented? There is nothing in this statute which would indicate that the Legislature intended to force public officials to negotiate in the sense that negotiation is required of private employers, and there is nothing to indicate that by this act the Legislature intended to vitiate the rule that public officials may not abdicate their responsibilities by negotiating a contract which would replace their discretion on important matters. There is some reason to conclude, however, that the legislature did not intend to limit the rights of firefighters to merely writing out proposals and depositing them silently with the proper authority.

"The issue of the right of the firefighters associations to use a strike, a slowdown, or other such techniques used in private industry has been eliminated from the pleadings in this case; but, since the right to use such economic pressures might conceivably be asserted by proposals authorized by the statute, the Court observes that the State has the right to prohibit violence and strikes contrary to the public interest. The Court is of the opinion that the Legislature of Alabama did not intend to abrogate this right by the statute which gives firefighters the right to present proposals relative to salaries and other working conditions. It would follow that no proposals relative to salaries and other working conditions which explicitly or implicitly attempts to assert the right of the firefighters to strike or to use any similar technique against the public interest would be a valid one authorized by the firefighter statute mentioned above. Many states do not permit labor unions in public employment; none of the states which permit such organizations authorize a contract between the employer and employee which recognizes a right to strike against public interest. The statute which gives the right to organize and present proposals denies the right to strike. Section 450(3), Title 37 of the Code of Alabama. We are speaking of proposals of the right to strike since no strike issue is present under the issues of this case as stated above.

"There seems to be a field of operation for Section 2 of the 'Firefighters Act', Section 450(3), Title 37, Code of Alabama. Since the City can make no binding contract on this subject as noted above, and since the firefighters are prohibited from striking against the public, this field of operation of the second section of the statute has not been explored to a great extent. In the State of New Jersey, a constitutional provision similar to the 'Firefighters Statute' quoted above was interpreted by the New Jersey Court. Among other things, it was observed:

" 'It should be emphasized that any one or more representatives may speak only for those employees who chose them. The Turnpike has no right to recognize a representative of only a segment of its employees as agent for all employees of the Turnpike'. New Jersey Turnpike Authority vs. American Federation of State, etc. emp., [83 N.J.Super. 389], 200 A.2d 134.

This is according to the simple rule of agency, and it appears that this principle would apply under our Alabama statute. The same case states the following:

" 'Although the Turnpike is not obligated to engage in collective bargaining, it is under an affirmative duty to meet with its employees or their chosen representatives and consider in good faith the grievances and proposals. However, any decision reached must be the result of

the independent judgment of Turnpike, taking into consideration, inter alia the grievances and proposals of its employees.'

"This Court is of the opinion that the defendants are under a duty to receive proposals from the petitioners in good faith relative to wages and working conditions. This may be done in person, or by duly authorized representatives of the defendants, who must report to the defendants. The defendant officials must make the decisions whether they hear the proposals and grievances personally, or by representatives. They may, if they so desire, make a memorandum of the proposals for the record as well as a memorandum of any comments or opinions relative to the same and their intentions and plans concerning said proposals. All of this is within their legal rights, but they are not obligated under the state of the law of this state to do more than receive the proposals and consider them in good faith. This the 'Firefighters Statute' requires by implication. There are no express or implied provisions regarding a written memorandum expressing the intention of the parties with reference to these matters; under the general powers of the defendants in their official capacities they have the power and authority in their discretion to make the memorandum mentioned above. It was said in State Board of Regents vs. United Packing House, etc. (Iowa), 175 N.W.2d 110:

" 'We have also held the Board of Regents may voluntarily meet and consult with representatives of groups of employees to discuss wages, working conditions and grievances. The decision whether to do so or not remains that of the Board of Regents. Therefore, any picketing to coerce the Board of Regents to bargain collectively against its better judgment would either be illegal, against public policy or both.'

"This Court is of the opinion that the same rules of law apply to the facts in is-

sue before us. Since the Legislature of Alabama has chosen to give to Firefighters the right to make proposals to governing bodies relative to wages, working conditions, etc., a field of operation of this statute is necessarily implied. Though the field is narrow when compared to the field of operation of collective bargaining in private industry, it is, nevertheless, present. Perhaps it was the opinion of the Legislature that it is a good policy for any employer and employee to reason together. Anything which will improve communications in good faith between employer and employees can be made a progressive move.

"In response to the pleadings of this case the Court, therefore, declares:

■ "1. The petitioners and the defendants cannot make a contract which would bind the defendants relative to wages, working conditions, etc.

■ "2. The defendants cannot be compelled to negotiate toward a labor contract as the terms are generally understood in the field of labor and management.

■ "3. The petitioners or their duly authorized representatives may appear before the defendant officials or their authorized representatives and make proposals as to wages, working conditions, etc.

■ "4. The petitioners may not legally make any proposals which would give them explicitly the right to strike against the public interest.

■ "5. The defendant officials are under a duty to hear the petitioners or their representatives in good faith on the subjects of wages, conditions of employment, etc., and the said officials are under a duty to consider the same in good faith. The final decision on any such issue rests with the public officials after they have received and considered proposals of the petitioners or their representatives in good faith.

■ "6. No representative may appear for any firefighter who has not authorized such appearance. The rule which gives exclusive representation to one union or representative in private industry has not been extended to public employees by the State or Federal government.

■ "7. Since no contract can be binding on the defendant officials, the petitioners are not authorized to picket in order to compel such contract.

■ "8. Petitioners and the defendants may enter into a written memorandum of proposals and plans relative to wages and working conditions, their respective opinion and intentions concerning the same if it is agreeable to both parties that they do so; but, neither the petitioners nor the defendants are compelled to enter into such written memorandum.

"Since it is mutually beneficial to the petitioners and the defendants in this proceeding that their respective rights be defined and declared, IT IS ORDERED that the petitioners pay one-half of the costs of this proceeding and the defendant, City of Decatur, which is represented by the other defendants, pay one-half of the costs of this proceeding.

"This the 14th day of June, 1972.

"Newton B. Powell

"Circuit Judge"

The Firefighters conceded in oral argument of this cause that the only assignment of error insisted upon relates to holding number 8 of the trial court's decree which limits the written expression between the parties to a memorandum. They contend that, while any such written document setting forth the terms of any agreement is concededly legally unenforceable, the court should have declared it proper and permissible for the parties to consummate their negotiations by the execution of a formal, though unenforceable, written contract.

The City, on the other hand, cross assigns error and insists that holding number 8 exceeds the legal authority of the court in declaring that the parties "may enter into a written memorandum of proposals and plans relative to wages and working conditions . . ."

In summary, the Firefighters contend the decree did not go far enough while the City contends that it went too far.

After careful consideration of the above decree and the briefs and arguments of respective counsel, we are convinced that the decree of the trial court is correct in every respect and that any addition thereto or comment thereon by us would be redundant. We therefore adopt the opinion of the lower court as the decree of this Court.

Affirmed.

On the appeal, MERRILL, COLEMAN, HARWOOD, McCALL and FAULKNER, JJ., concur.

HEFLIN, C. J., and MADDOX, J., dissent.

On the cross appeal, HEFLIN, C. J., and HARWOOD, MADDOX, McCALL and FAULKNER, JJ., concur.

MERRILL and COLEMAN, JJ., dissent.

HEFLIN, Chief Justice (dissenting):

The firefighters' only contention of error is that the final decree of the trial court should have held that a written agreement between the City and the firefighters was permissible

(1) if the City agrees to enter into a written agreement;

(2) if the agreement is terminable at will by the city; and

(3) if the agreement is subject to the continuing legislative discretion of the City.

The Firefighters' Act (Act No. 229, Acts of Alabama, 1967, Regular Session, approved August 16, 1967) assured all firefighters serving the state or any municipality in the state the right and freedom of association, self-organization, and the right to join or to refuse to join a labor organization and to have the right to have the representatives of their own choosing to present proposals relative to salaries and other conditions of employment. However, this Act limits this right by prohibiting such a firefighter from striking or asserting the right to strike or being a member of an organization that asserts the right to strike against the state or any municipality, knowing such organization asserts such right.

Black's Law Dictionary, Revised 4th Edition, 1968, on page 1015 defines a labor organization as follows:

> "A combination of workmen usually, but not necessarily, of the same trade or of several allied trades, for securing by united action, the most favorable conditions as regards wages, hours of labor, etc., for its members. Keith Theatre v. Vachon, 134 Me. 392, 187 A. 692, 694; People v. Distributors Division, Smoked Fish Workers Union, Local No. 20377, 169 Misc. 255, 7 N.Y.S.2d 185, 187."

Webster's Third New International Dictionary, Unabridged, 1966, defines labor union as follows:

> "A labor organization created for the purpose of advancing (as by collective bargaining) its members' interests (as in respect to wages and working conditions)."

A labor union certainly is not a social organization, but is an organization that has among its primary functions the following:

1. Collective bargaining for its members;

2. An agency that can execute a labor-management agreement for its collective membership.

When the legislature expressly assured all firefighters serving the state, or any municipality, the right to join a labor organization, it necessarily assured the firefighters the right to have the labor organization act as their collective bargaining agent and their signatory agent to the collective bargaining agreement.

Therefore, I am of the opinion that the relief sought by the firefighters on this appeal should be granted.

MADDOX, J., concurs.

COLEMAN, Justice (dissenting):

The plaintiffs seek declaratory relief as to their rights as employees of the City Fire Department in their dealings with the city governing body.

From the judgment rendered, plaintiffs appeal and argue two assignments of error, to wit:

## "ASSIGNMENT OF ERROR NUMBER ONE

"1. The Court erred in not including in its judgment rendered herein declaring the rights, status and other legal relations between the parties in this cause the following declaration:

> "That a written agreement relative to salaries and other conditions of employment of Decatur Fire Department Employees, between the City of Decatur and the Decatur Fire Fighters Association, as representative of said employees, is legally permissible where the agreement is terminable at will by the City of Decatur and is subject to the continuing legislative discretion of the City of Decatur. (Tr. 55–61).

## "ASSIGNMENT OF ERROR NUMBER SIX

"6. For that the Trial Court erred in failing to find, rule, adjudge, decree and declare to what extent the law of Alabama limits the right of the City of

Decatur to enter into written agreements with the Decatur Firefighters Association, as representative of Decatur Fire Department employees, regarding salaries and conditions of employment of said employees. (Tr. 55–61)."

I agree with the majority that plaintiffs' assignments 1 and 6 are not sustained.

Defendants have cross assigned errors. Cross assignment No. 3 recites as follows:

" '3. The trial court erred in finding, determining and declaring as a part of the final judgment in said cause, that part of Paragraph 8 thereof which reads as follows:

" '8. Petitioners and the defendants may enter into a written memorandum of proposals and plans relative to wages and working conditions, their respective opinion and intentions concerning the same if it is agreeable to both parties that they do so; . . .' (Transcript Page 61).' "

In the opinion of the trial court, at the end of Paragraph 8, the following words appear in addition to the words set out in cross assignment No. 3, to wit:

" . . . but, neither the petitioners nor the defendants are compelled to enter into such written memorandum."

The following definition of memorandum is found in Black's Law Dictionary, 4th Edition 1951, pages 1135, 1136:

"MEMORANDUM. Lat. To be remembered; be it remembered. A formal word with which the body of a record in the court of king's bench anciently commenced. Townsh. Pl. 486; 2 Tidd, Pr. 719.

"Also an informal note or instrument embodying something that the parties desire to fix in memory by the aid of written evidence, or that is to serve as the basis of a future formal contract or deed. Plott v. Kittelson, 58 N.D. 881, 228 N.W. 217, 221.

"This word is used in the statute of frauds as the designation of the written agreement, or note or evidence thereof, which must exist in order to bind the parties in the cases provided. The memorandum must be such as to disclose the parties, the nature and substance of the contract, the consideration and promise, and be signed by the party to be bound or his authorized agent. See 2 Kent. Comm. 510; Des Brisay v. Foss, 264 Mass. 102, 162 N.E. 4, 6."

In 1964, in International Union of Operating Engineers, Local 321 v. Water Works Board, 276 Ala. 462, 163 So.2d 619, this court held that a public employer, such as the defendants, has no authority to engage in collective bargaining or enter into collective bargaining contracts without specific legislation authorizing the public employer to do so. The following is an excerpt from the opinion:

"The rule stated by the annotator in 31 A.L.R.2d 1142 at page 1170 seems to be the rule of the majority, and supported by well reasoned cases:

" 'Public employers cannot abdicate or bargain away their continuing legislative discretion and are therefore not authorized to enter into collective bargaining agreements with public employee labor unions. Constitutional and statutory provisions granting the right to private industry to bargain collectively do not confer such right on public employers and employees.'

"The opinions of the Alabama Attorneys General are likewise without conflict to the effect that state, county, and municipal agencies of this State are without legal authority to negotiate or to enter into collective bargaining agreements with labor unions. See Attorney General Reports, April–June, 1941, p. 55; . . . In the April 10, 1941 opinion of the Attorney General of Alabama, su-

pra, it appears that the President of the County Board of Revenue of Gadsden, Alabama presented an inquiry to the Attorney General as to whether or not said Board of Revenue 'may legally enter into a contract or agreement with a labor organization * * * as a bargaining agent for county employees with respect to hours of employment, wages, etc.' The opinion of the Attorney General was as follows:

" 'It is my opinion that your inquiry must be answered negatively.

" ' . . . The beneficial results of cooperative action on the part of labor generally is apparent. But the question raised by your inquiry does not involve the power or authority of the employee class. Solely presented is the right of a county, a mere political subdivision of the State (First National Bank v. Jackson County, 227 Ala. 448, 150 So. 690; Pickens County v. Williams, 229 Ala. 250, 156 So. 548; Moore v. Walker County, 236 Ala. 688, 185 So. 175)—an agency of limited jurisdiction having only those powers expressly authorized by statute or necessarily implied therefrom (Corning v. Patton, 236 Ala. 354, 182 So. 39)—to enter into a contract, the ultimate effect of which might be to remove the control of the government from the people as a whole, acting through their duly constituted officials.

" ' . . . '

"Thus the public agencies of Alabama have long been advised, without conflict, that matters of wages, hours, and conditions of employment never have been, and cannot become, a matter of collective bargaining and contract in the absence of constitutional or statutory authority and of course such administrative rulings having been in force and effect for many years, are highly persuasive authority of the correctness of the rule. . . ."

276 Ala. 464, 465, 163 So.2d at 621, 622

As it appears to me, the declaration in the instant case in Paragraph 8 of the judgment, that the city governing body (the defendants) " . . . *may enter into* a written memorandum of proposals and plans relative to wages and working conditions, *their* respective opinion and *intentions* concerning the same . . . ." (Emphasis Supplied), is a declaration that the parties may bargain as to wages and working conditions and "may enter into" an agreement concerning the same "if it is agreeable to both parties that they do so." Plaintiffs argue that the declaration in Paragraph 8 is now authorized by a statute enacted in 1967 which recites as follows:

"Section 2. All firefighters serving the state or any municipality in the state either as paid firemen or as volunteer firefighters who comply with the provisions of this Act are assured the right and freedom of association, self-organization, and the right to join or to continue as members of any employee or labor organization which complies with this Act, and shall have the right to present proposals relative to salaries and other conditions of employment by representatives of their own choosing. No such person shall be discharged or discriminated against because of his exercise of such right, nor shall any person or group of persons, directly or indirectly, by intimidation or coercion, compel or attempt to compel any firefighter or fireman to join or refrain from joining a labor organization." Act No. 229, 1967 Acts, page 598, approved August 16, 1967; see Pocket Parts, 1958 Recompiled Code, Title 37, § 450(3).

The statute provides that firefighters are assured of the right and freedom of association, self-organization, to be members of any labor organization which complies with the statute, and to present proposals relative to salaries and other conditions of employment by representatives of their own choosing. Nowhere in the quoted statute is authority granted to any municipality, or its governing body, to engage in

**62**

collective bargaining as to salaries or conditions of employment, or to "enter into" a written memorandum relative to wages and working conditions. In fact, the statute does not grant any authority of any kind to a city or its governing body. Since no express power is granted to the municipality, there can be no implication that any implied power is reasonable or necessary to enable the exercise by the city or any power expressly granted.

In *International Union,* supra, this court quoted with approval from an opinion of the Supreme Court of Florida in Miami Water Works Local No. 654 v. City of Miami, 157 Fla. 445, 26 So.2d 194, 165 A.L.R. 967, as follows:

"'The City of Miami is a governmental entity created by the state. It derives its powers and jurisdiction from the sovereign authority. It is limited to the exercise of such powers as are expressly granted to it by the state, or as are necessarily and fairly implied in or incident to the powers expressly granted. * * * It is a public institution designed to promote the common interests of the inhabitants in their organized capacity as a local government. Its objects are governmental, not commercial. * * * It has no authority to enter into negotiations with the labor union, or any other organized group, concerning hours, wages, or conditions of employment * * *'" (276 Ala. at 464, 163 So.2d at 621)

Assuring or granting to firefighters the rights of freedom of association, of organization and membership in unions, and to present proposals relative to conditions of employment, is not a grant to the governing body of a city of the right to engage in collective bargaining with the representatives of employees of the city or to "enter into" a written memorandum as to conditions of employment. No grant of such authority to the city may properly be implied from the statute as I understand it.

In the absence of the grant of such authority to the defendants, the declarations of Paragraph 8 of the judgment appear to me to be directly in conflict with the holding of this court in *International Union,* supra. Being of the opinion that the statute relied on does not grant such authority to defendants, I would hold that the declaration in Paragraph 8 of the judgment appealed from is erroneous and would reverse the judgment in this respect.

MERRILL, J., concurs.